DONALD B. LOWNDS *v.* DANICE LOWNDS

SUPERIOR COURT   JUDICIAL DISTRICT OF   FILE NO. FA 227586
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed January 18, 1988

*Leary & Fahey,* for the plaintiff.
*Dubay & Andreini,* for the defendant.

FREED, J. The plaintiff, Donald Lownds, and the defendant, Danice Lownds, were married September 2, 1961. The court, *Brenneman, J.,* by order dated September 7, 1979, dissolved their marriage. At the time of dissolution the court entered the following orders: "[T]he plaintiff shall pay to the defendant the sum of $1500.00 per month as unallocated alimony and support for a period of five (5) years from the date hereof; and . . . the plaintiff shall thereafter pay to the defendant the sum of $400.00 per month as alimony for a period of five (5) years, at which time said alimony payments shall be reduced to $1.00 per year, modifia-

ble only if the defendant becomes disabled and/or unemployable. Upon the defendant reaching the age of 62 years, said alimony payment shall cease. Five (5) years after the date hereof, the plaintiff shall pay as support for the minor child Daniel J. Lownds, the sum of $400.00 per month. The plaintiff shall maintain CMS, Blue Cross or their equivalent for the benefit of said minor children and shall pay all orthodontia bills incurred for the minor child David F. Lownds. The plaintiff shall maintain in full force and effect a $100,000.00 life insurance policy, # 226322J with the Security Connecticut Life Insurance Company, for the benefit of the defendant wife and the minor children during their minority for a period of ten (10) years from the date hereof. The plaintiff shall pay and save harmless the defendant from all income tax liabilities for the 1977 and 1978 calendar years. The plaintiff shall pay all outstanding family bills exclusive of first and second mortgages on the premises located at 95 Randall Drive, Suffield, Connecticut, which bills shall include an obligation to St. Mary's Credit Union in the approximate sum of $5200.00. . . ."

In February, 1980, the defendant brought an application for contempt. On February 22, 1980, the court entered certain orders and continued the matter to April 25, 1980, at which time the court, *Barall, J.,* found an arrearage in the amount of $6000, issued a capias mittimus as a result of the plaintiff's failure to appear, and ordered the original judgment back into full force and effect.

The file reflects appearances before a Connecticut family magistrate on May 6, 1987, and June 6, 1987, continued to July 17, 1987. Although there are no documented magistrate proceedings in the file, the parties represent that the magistrate found that the plaintiff was not in default of an August 1981 Uniform Reciprocal Enforcement of Support Act order (URESA)

issued by the District Court of the Sixth Judicial District of Wyoming, which modified the Connecticut dissolution decree issued September 7, 1979. The URESA order was issued after the Wyoming court heard testimony by the respondent, the plaintiff in this action, regarding his inability to pay the sum ordered by the Connecticut court, and after the Wyoming court reviewed a written stipulation between the plaintiff and the defendant purporting to modify the unallocated alimony and child support payments to $300 monthly. The Wyoming court order reflects that it was issued in part on the basis of that court's erroneous belief that the stipulation had been entered in the Connecticut Superior Court. The parties represent that the Connecticut family magistrate, after finding that the plaintiff was not in default of the Wyoming order, dismissed the URESA proceedings in July, 1987.

On July 23, 1987, the defendant filed a motion for contempt with the court. A motion for modification by the defendant, claiming a substantial change in circumstances, filed July 23, 1987, also appears in the court record.

The court finds from the credible evidence produced at the hearing before it the following pertinent facts: In April, 1980, the plaintiff, who was then in contempt of this court, fled the state to Wyoming. He made no further payments of any kind to the defendant.

Approximately one year later, apparently in response to a URESA claim filed by the defendant, the plaintiff contacted her by telephone. He advised her that he was unwilling and unable to pay the order issued by this court. He further stated that he could pay her only $300 per month and if she did not agree to accept that amount he would pay nothing and would leave Wyoming. Upon the defendant's acceptance of the plaintiff's proposal, she was told by him to contact Attorney

William Bromson to have a legal document drawn to reflect this agreement. This document, dated June 18, 1981, was submitted to the Wyoming URESA court, which entered an order modifying the Connecticut order in the belief that this court had done the same. The agreement was never submitted to this court for approval or modification. The document provided for a reduction of alimony and support to $300 per month and a forgiveness or abatement of a then existing $60,000 arrearage.

The plaintiff has made monthly payments of $300 pursuant to the agreement. He returned to this state in 1986 and is currently employed as a bank loan officer earning $682 net per week. No evidence was presented to establish, and the plaintiff's affidavit fails to reflect, what the plaintiff's income was at the time of the original decree. The defendant apparently earned $104 net per week at the time of the decree and is earning $302 net per week at the present time.

The defendant has presented evidence to establish, and the court finds, that, if an arrearage is in fact due to the defendant, that arrearage is $114,895 through October, 1987. The plaintiff claims that no arrearage is in fact due because of the signed agreement of June 18, 1981, which was approved by the Wyoming court. The defendant claims that the document does not modify this court's order because it was never approved by this court and because no order of modification was ever in fact entered by this court. The defendant also seeks a modification at the present time.

To find the plaintiff in contempt, the court must first find that there is in fact an arrearage due to the defendant, and if so, the court must find that the plaintiff's failure to pay the amounts ordered was a wilful violation of the court's order. Before a modification can be

ordered, it must be determined whether there has been a substantial change of circumstances in the financial status of either party.

To decide whether an arrearage is owed to the defendant, the court must first answer the following questions: (1) What is the legal effect of the Wyoming court's entry of a "modified" order of support of $300 per month? (2) Can the parties by private agreement modify an order of this court pertaining to alimony and support without obtaining approval from this court for such a modification? (3) Can the defendant's claim be barred by any of the following defenses raised by the plaintiff, namely, equitable estoppel, laches or waiver? (4) May a claim of fraud or duress prevent the enforcement of the agreement between the parties?

The first question that this court must answer is whether the Wyoming court's "modification" of the alimony and support order issued by this court was binding. The action in the Wyoming court was a result of the defendant's initiation in Connecticut of a petition under URESA, which has been adopted by both Connecticut and Wyoming. The remedies provided therein are designed to assist people such as the defendant in enforcing support orders issued in the petitioner's state. Those remedies are in addition to, and not in substitution for, any other remedies available to the petitioning party. See General Statutes § 46b-181; *Cahn* v. *Cahn,* 117 Misc. 2d 1054, 459 N.Y.S.2d 657 (N.Y. Civ. Ct. 1982).

This problem is specifically addressed by statute in both Connecticut and Wyoming. The statutes of both states provide that "any order of support issued . . . when acting as a responding state shall not supersede any previous order of support issued in a . . . dissolution of marriage . . . ." General Statutes § 46b-204; Wyo. Stat. § 20-4-131 (1977). The Wyoming court's

order had no effect whatsoever on the order of this court issued pursuant to the decree of dissolution.

Undisputably, the parties entered into a written stipulation of modification on or about June 18, 1981. Did this stipulation, although never submitted to or approved by this court, nevertheless bind the parties? General Statutes § 46b-86 (a) provides for the modification of permanent support and alimony orders by the court upon a showing of a substantial change of circumstances. A support order can be modified only by the court. *Brock* v. *Cavanaugh,* 1 Conn. App. 138, 141, 468 A.2d 1242 (1984).

The reason for this rule is apparent. The court is vested with the ultimate responsibility for determining and safeguarding the best interests of children. *Masters* v. *Masters,* 201 Conn. 50, 64–65, 513 A.2d 104 (1986). Although parties have a statutory right to enter into agreements affecting their children, a trial court has the power to reject or modify such agreements if it determines that such agreements are not equitable. Id., 65. It is the duty of the court to enter such orders as it believes to be in the best interests of the children, and it is a responsibility that cannot be delegated or abrogated by agreement of the parties. Id., 64–65.

Additionally, Connecticut courts have long recognized the independent nature of a child's right to parental support. *Burke* v. *Burke,* 137 Conn. 74, 79, 75 A.2d 42 (1950). A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child that the court is compelled to enforce. *Guille* v. *Guille,* 196 Conn. 260, 263–64, 492 A.2d 175 (1985).

It is, therefore, the opinion of this court that, in accordance with General Statutes § 46b-86 (a) and the pronouncement of the Connecticut Appellate Court in *Brock* v. *Cavanaugh,* supra, an order of support and

an order of alimony can be modified only by the court. Therefore, the agreement of June 18, 1981, did not effect a modification of the outstanding support and alimony order of this court.

The plaintiff may still prevail in his assertion that no arrearage is due and that he is not in contempt if he can prevail on any of his defenses, i.e., that the defendant's claim is barred by estoppel, waiver or laches. The defendant has added a second string to her bow by claiming that the stipulation was induced by fraud or duress, making the entire transaction void. The court will discuss each one of those claims separately.

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights that might otherwise have existed against another person who has in good faith relied upon the first party's conduct and who has been led thereby to change his position for the worse. *Bozzi* v. *Bozzi,* 177 Conn. 232, 241, 413 A.2d 834 (1979).

There are two essential elements to an estoppel: (1) one party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and (2) the other party, influenced thereby, must actually change his position or do some act to his injury that he otherwise would not have done. *Papcun* v. *Papcun,* 181 Conn. 618, 621, 436 A.2d 282 (1980). In the absence of prejudice, estoppel does not exist. See also *Brock* v. *Cavanaugh,* supra.

The evidence presented to this court nowhere indicates that the defendant made any inducements as claimed by the plaintiff. The plaintiff has presented no credible evidence to warrant a conclusion that the plaintiff had changed his position or acted to his injury. The court concludes that no estoppel has been proved by the plaintiff.

Waiver is the intentional relinquishment of a known right. *Olean* v. *Treglia,* 190 Conn. 756, 773, 463 A.2d 242 (1983); see also *Bozzi* v. *Bozzi,* supra. The plaintiff claims that, by accepting payments of $300 per month for a period of approximately six years, the defendant has waived her rights under the original judgment. In support of his contention, the plaintiff cites *DiBiaso* v. *DiBiaso,* 17 Conn. Sup. 483 (1952), and *Guerrera* v. *Guerrera,* Judicial District of Waterbury, Docket No. 35985 (Oct. 14, 1982). The court in each of those cases was persuaded to find the existence of a waiver by the long-term acceptance by one party of a change in a court order when that party could have taken action to protest.

In the present case, the significant difference is that the defendant was unable to do anything about the change invoked by the plaintiff because he was outside the jurisdiction of this court. As soon as he returned, the defendant commenced legal action against him. The court finds that there was no waiver by the defendant.

Laches consists of two elements. First, there must have been an inexcusable delay by one party, and second, that delay must have prejudiced the other party. The mere lapse of time does not constitute laches unless it resulted in prejudice to the plaintiff, as where, for example, the plaintiff was led to change his position with respect to the matter in question. *Papcun* v. *Papcun,* supra; *Bozzi* v. *Bozzi,* supra; *Brock* v. *Cavanaugh,* supra. No credible evidence has been presented to the court to establish that the defendant has delayed any action on her part; on the contrary, from the plaintiff's first default, the defendant has taken every action possible to pursue her claim. The court finds no laches in the present case.

A stipulation is to be interpreted according to contract principles, which involve an inquiry as to the inten-

tion of the parties at the time of the agreement. *Kaplan* v. *Kaplan,* 8 Conn. App. 114, 118, 510 A.2d 1024 (1986). For a contract to be valid it must have been freely entered. *McCarthy* v. *Taniska,* 84 Conn. 377, 381, 80 A. 84 (1911). A contract, therefore, is not valid if one party is put in fear by the other party for the purpose of obtaining an advantage over him. See id.

The plaintiff here clearly used the element of fear in persuading the defendant to accept his proposition of a reduced payment. He threatened her with further flight and with no payment at all if she did not acquiesce. Duress was the foundation of this agreement. The court, therefore, holds that it is invalid and unenforceable.

For the reasons stated above, the court finds that the present orders of the court issued pursuant to the terms of the judgment of dissolution of September 7, 1979, remain in full force and effect. In accordance with the terms of that judgment, an arrearage is found due and owing from the plaintiff to the defendant in the amount of $114,895 as of October 31, 1987.

The court must now decide whether the plaintiff's conduct in this matter rises to that of contempt. The court must determine whether the plaintiff's failure to pay the order was in fact a wilful failure. See *Mays* v. *Mays,* 193 Conn. 261, 476 A.2d 562 (1984). His wilfulness, if any, may be negated by an inability to pay or a mistaken belief that he was not obligated to pay the order of the court because he erroneously believed that the order had been modified. *Niles* v. *Niles,* 9 Conn. App. 240, 254, 518 A.2d 932 (1986); *Marcil* v. *Marcil,* 4 Conn. App. 403, 405, 494 A.2d 620 (1985).

The court is satisfied that the plaintiff's failure to pay was not wilful. The evidence presented to the court clearly indicates that at least since the time of the sign-

ing of the stipulation and its presentation to the Wyoming court, the plaintiff believed that he was only obligated to pay $300 per month to the defendant and that his previous arrearage was abrogated. The court therefore finds that the plaintiff is not in contempt.

The defendant has filed a separate motion to modify the present order of alimony and support. In her motion, the defendant makes reference to the modification entered by the Wyoming court and also alleges a substantial change in circumstances.

Having already ruled that the order by the Wyoming court in no way modified the present order, the court must now consider whether a modification should be granted on the basis of a substantial change of circumstances. See Public Acts 1987, No. 87-104. Inasmuch as the defendant has presented insufficient evidence of any substantial change in circumstances, the motion to modify is denied. No counsel fees are awarded.

The only question remaining for the court is to decide a fair, just and reasonable order for the plaintiff to pay the arrearage due to the defendant. In view of the plaintiff's present financial circumstances as he has represented in his financial affidavit of October 14, 1987, the court will reestablish the arrearage as of February 1, 1988, (provided the plaintiff has made his regular payments of $300 per month for November and December, 1987, and January, 1988) at $116,395 and order a payment of $400 per month on the arrearage in addition to the present court-ordered payments of $400 support and $400 alimony per month commencing February 1, 1988. Commencing February 15, 1989, the order on the arrearage shall be increased to $800 per month, and on September 7, 1989, the order shall be increased to $1200 per month.