[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case raises two primary issues.
1. Can the court retroactively modify an original court order by enforcing a parties' private agreement to change the method (and hence total amount) of payment from $200 a week to $800 a month?
2. Can the plaintiff's claim for arrearage and motion for contempt be barred by the defenses of equitable estoppel, laches or waiver?
Florence Ginsburg brought an action for contempt against her former husband, Gilbert, for his failure to pay the amount of alimony specified in the court order.
The marriage was dissolved August 23, 1985 with a court order that the defendant pay the plaintiff $200 per week in alimony from September 1987 to September 2000.
The Ginsburgs came to a later private agreement that Mr. Ginsburg would pay the plaintiff $800 once a month instead of $200 weekly. Plaintiff claims defendant approached Mrs. Ginsburg and asked her if she would be willing to accept the alimony on a monthly basis because he was not good with CT Page 2070 paperwork.
Both sides acknowledge that, pursuant to an agreement, Mrs. Ginsburg sent monthly alimony bills to the defendant for $800.
Plaintiff believed $800 a month was the equivalent of $200 a week, claiming she never agreed to a modification in the amount of alimony owed her but only agreed to a modification in the method of payment, monthly as opposed to weekly.
From September of 1987 through September of 1990 the defendant paid $800 a month to the plaintiff for alimony. From October 1990 through January 1991 he paid $600 a month. Finally, in February 1991, he paid $400 a month.
The plaintiff brought a motion for contempt for defendant's failure to pay the court-ordered alimony amount, claiming an arrearage of $3,466.30 as of February 15, 1991 for alimony and other court-ordered expenses.
I. Modifying court order by private agreement.
The Connecticut Appellate Court in Brock v. Cavanaugh,1 Conn. App. 138, 141, 468 A.2d 1242 (1984), held that in accordance with Connecticut General Statutes 46b-86 (a) child support orders can only be modified by the court. Even if private parties were in complete agreement over a modification, in order for that agreement to be effective it has to be modified by court order. Id.
Although the Appellate Court was primarily concerned with a private parties' agreement to modify child support, Connecticut General Statutes 46b-86 (a) states that only the court can modify permanent support and alimony orders and further reassure a showing of a substantial change in circumstances.
An order of support and an order of alimony can only be modified by court approval. Lownds v. Lownds, 41 Conn. Sup. 100,106 (1988). In Lownds the parties entered into a private written agreement to reduce the alimony and child support payments from $4,500 a month to $300 per month. This private agreement was found to be invalid as it was not approved by the court. Id.
In the present case the parties agreed defendant would pay $800 a month in alimony support. They did not obtain court approval for this change in method of payment, (which affected the amount of the payment). This private agreement is CT Page 2071 ineffective without court approval.
II. Equitable Estoppel.
The doctrine of equitable estoppel prevents a party from asserting his rights when his own voluntary conduct caused the other person to change his position to that parties' involvement. Lownds, 41 Conn. Sup. 100, 106; Bozzi v. Bozzi,177 Conn. 232, 241, 413 A.2d 834 (1970). In order for defendant to invoke the defense of equitable estoppel he must show:
(a) plaintiff did or said something which was intended or calculated to induce him to believe in the existence of certain facts and to act upon that belief and
(b) that he, influenced by plaintiff, actually changed his position or did some act to his injury that he otherwise would not have done. Id. In the absence of prejudice, estoppel does not exist. Id.
The function of equitable estoppel is to prevent fraud and is applied against wrongdoers. 28 Am.Jur.2d 624, 630. It follows then that "declarations or conduct founded upon innocent mistake have no ingredient of fraud or intent to deceive or mislead." Id. Therefore, where the conduct or representation of the party sought to be estopped is due to ignorance founded upon innocent mistake no estoppel will arise. Similarly, no estoppel will arise from a mutual mistake of the parties as to which they are equally at fault. 28 Am.Jur.2d 624, 652. Nor will a person be permitted to base a claim of estoppel on any act of another which was committed upon his own request or caused by his own conduct." 28 Am.Jur.2d 624, 661.
The defense claims defendant substantially changed his position because he altered his conduct in a manner that was not in conformity with the judgment entered in 1985. However, merely altering conduct in a manner that is not in conformity with an original judgment is not "changing one's position" nor is it doing an act to one's injury. See, Brock, 1 Conn. App. 138,142 (husband's failure to pay support based on temporary nonenforcement on part of wife is not "change in position" within the meaning of equitable estoppel)i Lownds, 41 Conn. Sup. 100,106; Bozzi, 177 Conn. 232, 241.
In Lownds the wife signed a written agreement to reduce the husband's support payments from $1,500 to $300. Husband thereupon reduced his support payments from the original court order of $1,500 and only paid $300 a month for six years. The court held there was no evidence to warrant a conclusion that CT Page 2072 plaintiff changed his position or acted to his injury under the equitable estoppel theory. Id. Thus, merely altering one's conduct in a manner that is not in conformity with an original judgment is not enough to warrant a finding of "change in position."
In the present case, the only change in position alleged is that the husband altered his conduct in a manner not in conformity with the original judgment. This will not be enough to substantiate a prejudicial change in position. In the absence of prejudice, estoppel does not exist.
Plaintiff believed the monthly amount of $800 was equal to a weekly payment of $200. Where "the conduct or representation of the party sought to be estopped is due to ignorance found on innocent mistake, no estoppel will arise." 28 Am.Jur.2d 645, 652.
Additionally, "estoppel will not arise from a mutual mistake of the parties as to which they are equally at fault." Id. This court finds that neither party realized changing the method of payment would change the amount. Based on this mutual mistake, then, the doctrine of equitable estoppel cannot apply.
Finally, "a person will not be permitted to take advantage of. . . any act of another which was committed upon his own request or was caused by his own conduct." 28 Am Jur 645, 661. Defendant approached plaintiff and requested that she accept payment in the form of $800 a month, instead of $200 a month. Plaintiff agreed. Thus, defendant's own conduct caused his position to change and not the conduct of the plaintiff.
Based on the general principles of equitable estoppel and that merely altering one's conduct so that it is not in conformity with an original judgment does not constitute a "change in position", the defendant's claim of equitable estoppel must fail.
III. Laches.
Laches requires:
1) an inexcusable delay in bringing a claim by one party and 2) that the delay prejudiced the other party. Lownds,41 Conn. Sup. 100, 107. Mere lapse of time does not constitute laches. Id. The defendant must have changed his position with respect to the matter in question. Id. CT Page 2073
Connecticut courts focus on whether defendant actually changed his position with respect to the matter in question rather than upon a definition of inexcusable delay.
In Bozzi, 177 Conn. 232, the defendant stopped paying alimony when his wife moved and did not contact him requesting alimony payments for eight years. The defendant claimed that he was prejudiced by his wife's delay in bringing claim for alimony, arguing that he used that money for other purposes. The court held that mere reliance on the nonenforcement of alimony was not enough to constitute a change in position. Id. In order to show a change in position defendant should have attempted to legally modify the support order. Unilaterally making the decision not to pay is not enough to constitute a change in position. Id. See also, Brock, 1 Conn. App. 138,142. Where Plaintiff claimed prejudice based on an arrearage claim $10,000, that his former wife had not enforced for six years, and that his second family would suffer if he were now forced to pay. Court held that defendant failed to take any action to change his position because he did not take any action to legally modify the support orders.
In the present case defendant had not attempted to legally modify the support order to reflect the parties' agreement. He claims reliance on plaintiff's nonenforcement of the original judgment and her agreement to accept payment in the form of $800 a month.
Laches does not apply.
IV. Waiver.
Waiver is the "intentional relinquishment of a known right." Lownds, 41 Conn. Sup. 100, 107. In Connecticut, the courts have found implied intentions to waive through the "long-term acceptance by one party of a change in a court order when that party could have taken action to protest." DiBiaso v. DiBiaso, 17 Conn. Sup. 483 (1952).
In DiBiaso the defendant was ordered by the court to pay $15.00 a week in alimony to the plaintiff. For approximately three years defendant paid plaintiff only $12.00 a week. The court stated that plaintiff "accepted these weekly payments, each of which was short $3.00, without any particular remonstrance or complaint." Id. Thus, the court concluded that the plaintiff "acquiesced, in the sense of waiver" to the $12.00 a week payments and could not now attempt to enforce he $15.00 a week payments. Id.
At first glance it appears that the facts of this CT Page 2074 present case are similar to DiBiaso, however, it was obvious to the plaintiff in DiBiaso that there had been a change in the amount of payment to be received, i.e., $15.00 a week to $12.00 a week, clearly a $3.00 difference. Mrs. Ginsburg, on the other hand, believed that the monthly amount of $800 was equal to the weekly amount of $200. It was not obvious to her that a change in method of payment was a change in payment amount. Therefore, although she acquiesced to a change in the method of payment, she did not acquiesce to a change in the amount of payment, as did the plaintiff in DiBiaso. Hence, Mrs. Ginsburg did not waive a known right.
Additionally, it is generally held that "ignorance of a material fact negatives waiver and waiver cannot be established by consent given under a mistake or misapprehension of fact." 28 Am.Jur.2d 645, 841.
The court finds an arrearage of $3,466.30 as of February 15, 1991 and directs the parties to meet and seek an agreement on the method of payment. If they are unable to reach an agreement, the court will direct a payment schedule upon receipt of an appropriate notice.
The court further finds defendant's failure to pay $200 a week was not a willful violation and finds the defendant is not in contempt.
Each party shall pay their own attorney's fees.
Joseph L. Steinberg, Judge.