[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR MODIFICATION AND CONTEMPT
The plaintiff has filed a motion for modification and a citation for contempt dated February 6, 1991. The respondent has filed a motion for modification and objection to the contempt citation dated March 21, 1991.
The parties were married on July 4, 1959 in Storrs, Connecticut. They were divorced on January 12, 1965, at which time the defendant was ordered to pay $15.00 per week by way of alimony. At that time, an order was entered that the plaintiff might resume her maiden name of Feldman. On June 22, 1966, a rule to show cause for contempt was issued by the court. This was heard on June 29, 1966, and an arrearage of $355.00 was found. The defendant was ordered to pay $200.00 forthwith and the balance at the rate of $5.00 per week until fully paid. There have been no other court proceedings from that date to the date of the current motions.
On February 1, 1967, the plaintiff wrote a letter to the defendant in which she stated that she no longer wished to continue receiving alimony. (See plaintiff's exhibit A and defendant's exhibit 3).[1] Upon receipt of the letter the defendant called the plaintiff to ask her what the letter was all about. She replied she did not need the money and felt that each of them should "get on with our life." The defendant testified he did not expect the letter and did not anticipate receiving such a letter. Between that date and February 1991, the plaintiff did not ask for any further payments of alimony.
The defendant married in 1968. Subsequently he and his wife adopted two children, a daughter now age 19 and a son now age 16. He also is supporting his widowed mother who has lived with him since 1983.
During the intervening years the plaintiff, while she was not in communication with the defendant himself, was in communication with the defendant's mother. It was possible for the plaintiff to locate the defendant during most of this time. In the year 1969, CT Page 930 the parties were in communication from time to time. The defendant always had a telephone general listing, and left forwarding addresses with the post office on any move. The defendant's mother received Christmas cards from the plaintiff for five to seven of the years between 1965 to 1983 and every year from 1983 to 1990. For twenty-four years the plaintiff made absolutely no attempt to seek alimony from the defendant. For twenty-four years the defendant in reliance upon the representations made to him by the plaintiff "got on with his life."
The plaintiff has remained single. She has no dependents and is employed at Yale University as a Senior Administrative Assistant earning $540.00 per week and a net pay of $389.00. She has had 2 1/2 years of college and in 1985 worked as a secretary for an attorney. She stated that from 1967 to 1990 she didn't ask for alimony because she wanted to put this behind her and forget about it. She lives in the family home now owned by her brother and her, free of any mortgage and appraised at $141,000.00.
The defendant at the time of the divorce was a management trainee working for W. T. Grant Company and was earning net take home pay of $103.00 per week. He had no assets other than a car and liabilities of $620.00. At the time of the divorce he paid $100.00 toward plaintiff's counsel fees. At this time he is a retail executive working and residing in New Jersey. He testified that he relied upon the contents of the plaintiff's letter, that he made credit applications and mortgage applications in which he stated he had no alimony obligation, that he had gone on with his life, had married, had adopted children, and had bought homes. There is an issue of credibility. The plaintiff recites one set of facts as the reason for her letter. The defendant recites another set of facts. The court finds as follows:
1. The plaintiff voluntarily and without duress wrote the letter of February 1, 1967.
2. The plaintiff sent the letter of February 1, 1967 freely and voluntarily.
3. The plaintiff by her letter expected to give up all further right to alimony.
4. The plaintiff by her letter has effectively waived her right to pursue any claim for alimony.
5. Had the plaintiff wished to pursue her claim for alimony she could have determined the defendant's whereabouts.
6. The lapse of close to twenty-four years without making any CT Page 931 claim of alimony has been prejudicial to the defendant.
7. The defendant relied upon the plaintiff's letter of February 1, 1967 that the plaintiff was claiming no further alimony from him.
8. The defendant has not wilfully and intentionally disobeyed the court's orders.
9. There has been an uncontemplated substantial change in the financial circumstances of the parties.
10. The plaintiff's request to increase the alimony from $15.00 per week to $100.00 per week is unfair and inequitable in view of her letter and in view of the delay in demanding any alimony.
11. It is fair and equitable that the alimony be terminated.
The question raised in this case is similar to the questions raised in Lownds v. Lownds, 41 Conn. Sup. 100 (1988). Different, however, is the fact that that case involved a signed agreement executed by the parties and it involved alimony and support. The analysis, however, by Judge Freed in the Lownds case is the same analysis that this court must undertake in the case at bar.
To find the defendant in contempt, the court must find that there is in fact an arrearage due to the plaintiff, and if so, the court must find that the defendant's failure to pay the amounts ordered was a wilful violation of the court's order. (See Lownds v. Lownds, supra at 103, 104.) To decide whether an arrearage is owed, the court must determine whether the plaintiff can by private agreement modify an order of this court pertaining to alimony, thus freeing the defendant of that obligation without the approval of this court. Also to be determined is the answer to the question of whether the plaintiff's claim can be barred by the defenses raised by the defendant of waiver, equitable estoppel or laches.
The order of the court of January 12, 1965 continued regardless of the plaintiff's letter of February 1, 1967, and continues until vacated or modified. Proper procedure required the defendant to apply to the court for an adjudication of the question of his continuing duty to make the alimony payments. Piacquadio v. Piacquadio, 22 Conn. Sup. 47, 52 (1960).
The defendant may still prevail in his assertion that no arrearage is due and that he is not in contempt if he can prevail on any of his defenses of equitable estoppel, waiver or laches. There have been no cases reported where there has been such a clear relinquishment of a known right. The plaintiff by her CT Page 932 letter voluntarily relinquished her right to receive alimony and the twenty-four year period is proof of the long term acceptance of that waiver by each of the parties. The court, therefore, denies the plaintiff's motion for modification and for contempt. The court finds an arrearage on the motion for contempt to March 25, 1991, the date of the filing of the plaintiff's motion of $18,840.00. By reason of the plaintiff's waiver of alimony, the court does not order any payment to the plaintiff of the arrearage. On the defendant's motion for modification and objection to contempt motion, the court grants the same and modifies the judgment of January 12, 1965 and terminates the award of alimony to the plaintiff as of March 25, 1991.
In view of the court's decision on the ground of waiver, the defenses of laches and equitable estoppel need not be considered.
Judgment on the plaintiff's and defendant's motion shall enter accordingly.
EDGAR W. BASSICK, III, JUDGE