[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision Re: Motion for Blood Tests
This is a paternity action brought by a putative father who also moves for blood tests to establish his paternity. While judicially admitted, the plaintiff argues that both he and the child, Jeremy, born March 20, 1985, have a right to such a determination.
The defendant mother claims that the judicial admission is sufficient, along with other competent evidence, including her assertion that plaintiff is the father of the child, to establish paternity without the need to subject the child to the intrusion of blood testing (HLA). The defendant mother contends that the child has a grave fear of needles in that he has a rare but non-lethal blood disorder, but needs to be restrained when blood is tested.
The attorney for the minor child has conferred with the doctors involved, both the pediatrician, Dr. Markowski, and the hematologist, Dr. Magnifico. Neither feel the drawing of blood would harm the child, and moreover that the child can withstand the process.
The mother had earlier brought an action to terminate the plaintiff's parental rights citing abandonment. That probate court action was transferred and consolidated with this action. She claims that she has raised Jeremy and his younger half-brother without assistance from the defendant or the State of Connecticut. She does not claim support, but she avers that she "has a strong interest here in maintaining the sanctity of her family, free from outside intrusion." (Emphasis added.) She argues that the plaintiff never pursued a relationship with this child, but for the payment of a small amount of money many years ago, and that he always assumed he was the father, but never acted as one. Only the filing of the petition for termination of parental rights made him sit up and take notice that there might be a relationship that he should not avoid. She alleges that to reintroduce this man into the life of this child would do harm to the child, and that his actions clearly do not warrant even permitting him to demonstrate that he is the biological father. Certainly he appeared to believe that he was the father, and made the conscious decision not to involve himself with the CT Page 10205 child. It is of serious concern that even upon a confirmation of parentage, he may elect to agree with her demand that his parental rights would and should be terminated. In that event, both adults would only be dealing with their own needs, and desires, regardless of the long-term effect on this minor child.
The parties each participated in an unprotected sexual act outside of a legal or moral union which may have produced this child, an autonomous person with rights of his own. Neither party has argued that there was even a semblance of a committed relationship prior to this pregnancy. The sanctity of his family is what is at issue here. Perhaps the defendant will, by virtue of her love and care of this child, continue to be the only parent to him. That is the ultimate question for the trial court. However, her adult decision to have this child with the plaintiff requires her to be bound by a process of full and fair determination of all the issues in this matter — only one of which is the paternity of this child.
The cases cited by defendant In re Latraya, 9 Conn. L. Reptr., 492, 493 (citing In re Juvenile Appeal,189 Conn. 276, 287 (1983), certainly do not hold that one parent can assert the sanctity of the family against another parent free from "outside" intrusion.
If it is demonstrated that the plaintiff is in fact the biological father of this child, and if he continues his position asserted both in this court and in the probate court, that he will try to reconstruct a relationship with this child if he is the father, then the court will reach the determination if that reconstructed relationship is possible, and more importantly, if it is in Jeremy's best interest. Certainly the court will have to assess the psychological implications to the child with respect to both alternatives, both of which present a minefield to the successful development of this child. Either his abandonment by his father will be complete, or he will be asked to come to know a stranger, who will be expected to be able to explain to the child why he was not a father to him all along. Both alternatives are unacceptable, but are the reality for this child. CT Page 10206
The court has the discretion to order blood (HLA) testing, In re Latraya, supra and Barlow v. Gerrera,9 Conn. App. 431, 432 (1987), see also Conn. Gen. Stat.46b-168. The rights of the child to have paternity established supercede the right of the mother or father. The fact that mother seeks no financial support is not dispositive. The child has an independent right to support which cannot be waived by mother. See Lownds v. Lownds, 41 Conn. Sup. 100, 105, 551 A.2d 775 (1988).
Accordingly, the motion is granted with a protective order that the sample shall be drawn from the child by either of his doctors without any disclosure to him as to the court-related purpose for the sample. The fact of the litigation is not to be disclosed to the child by any party or attorney until further order of the court.
DRANGINIS, J.