[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR CONTEMPT, DEFENDANT'SMOTION FOR MODIFICATION, PLAINTIFF'S MOTION TO DISMISS ANDDEFENDANT'S OBJECTION TO THE MOTION TO DISMISS
1. FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff, Karen Villa, and the defendant, Donald Villa were married on March 16, 1964. There were two children born issue of the marriage: Lisa Ellen Villa, born March 16, 1965, and Donald Jason Villa, born October 31, 1967. The parties were divorced on December 23, 1976. The parties had executed a Separation Agreement which was incorporated into the Court's file "but in all respects, survive[d] the judgment". As part of the CT Page 6268 decree, the defendant husband was to pay to the plaintiff wife $50.00 per week as alimony and $50.00 per week for the support of each of the minor children. Additionally, in regard to alimony and support, the defendant was to pay to the plaintiff a cost of living increase in the same percentage rate as any cost of living increase or raise in salary received by the defendant.
Paragraph 13 of the Separation Agreement states in part that the agreement shall be incorporated in the decree but "shall not merge in such decree but shall in all respects survive the same and be forever binding and conclusive upon the parties." Paragraph 14 of the Separation Agreement provides that ". . . No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement."
At the time of the divorce, custody of the then minor children was given to the plaintiff. Both children did in fact reside with the plaintiff mother until August of 1981. At that time, Jason (aged 14) moved in with the defendant father. Except for an approximate one month period, Lisa resided with her mother until she reached the age of majority. Jason continued to reside with his father, with the exception of a twenty-six week period of time, until he was twenty-one.
When Jason moved in with his father, the parties agreed that a fair support payment from mother to father in Jason's behalf would be $50.00 per week. This was equal to the defendant's original alimony payment to the plaintiff. Instead of the parties exchanging checks for the same amount, the parties agreed that the defendant would stop making the alimony payment at that time. During the time that Jason returned to live with his mother in 1984 for about twenty-six weeks, the defendant did pay the plaintiff both $50.00 per week for child support and $50.00 per week for alimony. Neither party went to court for a modification of the decree seeking a change of custody regarding Jason or a change regarding the support order.
Jason reached the age of majority on October 31, 1985. Aside from the above-mentioned twenty-six week period, the defendant never again made an alimony payment to the plaintiff. During the entire time that the defendant did pay alimony, no requests for information or increase were made by the plaintiff concerning increases in his pay or in the cost of living. In fact, the plaintiff never sought an increase in alimony or support based on CT Page 6269 cost of living increases or the defendant's increases in pay from the date of the dissolution of marriage, May 19, 1977, until her appearance at trial, April 17, 1998.
On May 1, 1995, the plaintiff filed a Motion for Contempt claiming the defendant had failed to comply with the court's alimony order. In response to this motion, the defendant filed a Motion for Modification of Judgment, on May 26, 1995, requesting a termination of alimony based on a change in the plaintiff's financial circumstances and/or waiver. Defendant also filed a Motion for Child Support on June 2, 1995, requesting child support from the plaintiff for the periods of time that the children lived with the defendant during their minority. On June 5, 1995, the court (Teller, J.) issued an order requiring the parties to file a joint trial management report within 10 days, with notice of a hearing date for the case to follow the joint filing.
During the next twelve month period, the parties exchanged discovery.
On July 15, 1996, the plaintiff filed a Motion to Strike the defendant's Motion for Child Support arguing that it did not state a claim upon which relief could be granted. The plaintiff also filed a Motion to Dismiss the defendant's Motion for Modification of Judgment, arguing that the court lacked jurisdiction to act based on insufficiency of service of process. On August 7, 1996, the defendant filed an Objection to the Motion to Dismiss, contending that such a motion needed to be filed within thirty days of the filing of an appearance and the plaintiff's attorney had filed an appearance over one year prior to the filing of the Motion to Dismiss.
The matter was scheduled for hearing on two prior occasions. On the first date, a continuation was necessary because defense counsel was hospitalized. On the second date, plaintiff's counsel requested a continuance. Accordingly, the matter was heard on April 17, 1998.
On the hearing date, all parties appeared and had an opportunity to be fully heard. At the time, defendant's Motion for Child Support was withdrawn as was the plaintiff's objection to said motion.
II. DISCUSSION
CT Page 6270
A. THE SEPARATION AGREEMENT
The parties are in disagreement as to what portion of the separation agreement became part of the court's judgment at the time of the dissolution. This court finds that pursuant to Section 46b-66 of the Connecticut General Statutes that this is an agreement in writing. It was presented to the court for the court's approval and the court (Reicher, J.) approved it. Accordingly, it did become incorporated into the judgment. The statute so providing for same (P.A. 74-169) was in effect at the time of this dissolution in May of 1977. The fact that the agreement is also able to stand alone as a contract does not preclude its inclusion in the judgment in this case.
 B. PLAINTIFF'S MOTION TO DISMISS #132 DEFENDANT'S OBJECTION TO MOTION TO DISMISS #134
Whenever an issue of jurisdiction is presented to the court, the court must decide that issue prior to proceeding to any other issue. Plaintiff claims that this court lacks jurisdiction over the defendant's Motion for Modification regarding the termination of alimony. The basis for plaintiff's argument rests on insufficiency of process. In this case, there is no argument that the defendant's Motion for Modification was mailed to opposing counsel and not served on the plaintiff pursuant to Section 52-50
of the Connecticut General Statutes.
If the plaintiff had not previously sought to open the judgment in this case by her Motion for Contempt which was served on the defendant according to Section 52-50 of the statutes, this court would agree with plaintiff's argument. Here, since plaintiff had already opened the case, Section 10-12 (formerly 121) of the Practice Book applies: ". . . When a party is represented by an attorney this service shall be made upon the attorney unless service upon the party himself is ordered by the judicial authority."
Plaintiff cites Shedrick v. Shedrick 32 Conn. App. 147 (1993) to support his argument. Shedrick is clearly distinguishable from the instant case. In that case, the first and only motion pending before the court was a motion to modify alimony retroactively. Accordingly, service of that first motion after judgment did have to be served pursuant to Section 52-50 of the statutes. CT Page 6271
Accordingly, plaintiff's motion to dismiss is denied and the defendant's objection to same is sustained.
 C. MOTION FOR CONTEMPT #119 MOTION FOR MODIFICATION #120
1. Laches
The defendant contends that the plaintiff can not now come to this court, seeking contempt against the defendant for failure to pay alimony, when it has been some eleven years since payment has been made. Further, defendant claims that since there has been no payment for this period of time, plaintiff has waived her right to alimony entirely, and said alimony should be terminated.
Plaintiff argues that plaintiff should not be foreclosed from past due alimony obligations — the defendant knew he should have sought a modification of the support obligation when the minor son went to live with him. Having not done so, plaintiff contends she should not be penalized from her receipt of the alimony monies owed her.
Laches consists of two elements: a delay to assert a right that was inexcusable and a prejudice to the payor by that delay.Kurzatkowski v. Kurzatkowski, 142 Conn. 680 (1955). It is true that a mere lapse of time is not enough to establish laches but that prejudice must also be present. Emerick v. Emerick,28 Conn. App. 794 (1992). It is also true that whether a party is guilty of laches is one of fact for the trier of fact. Kurzatkowski,
supra at 684.
In the instant matter, there is no question that the plaintiff had a right to claim alimony when the defendant failed to make any payments after October of 1985. Regardless of what "deals" had been worked out between the parties, at that time, Jason was eighteen. Any support obligation the plaintiff felt she had which she had previously been exchanging for her weekly alimony payment would have terminated when Jason turned eighteen. Despite this, the plaintiff chose to do nothing for the next eleven years. During the hearing she claimed that she did not want to "upset the apple cart" and did not want the defendant "to throw Jason out". She further testified that she had many personal problems since 1985 and ". . . it was just that I was very busy, especially with the traveling and working out of state and living in Florida". CT Page 6272
The court does not find the plaintiff's reasons for her nonaction persuasive. Thus, the court finds that there was a delay to assert her alimony right which was inexcusable, and the first element of laches has been satisfied.
Since 1985, while it is true that the defendant's salary has changed significantly, so too has the plaintiff's. In fact, a review of the respective financial affidavits filed by the parties at the time of this hearing shows the plaintiff's current net wages are only $10.60 per week less than that of the defendant's ($770.00 v. $780.60). At the time of the dissolution, the plaintiff had no income except for the support and alimony payments from the defendant. The defendant did not file an affidavit at the time of the dissolution (nor participate in the formal court proceeding) but testimony during this hearing indicted that he was earning about $24,000 per year or $461.53 gross per week.
Since plaintiff's income has changed so dramatically for the better and is so relatively close to the defendant's current income, there is clearly a prejudice to the defendant to have to continue paying alimony to an individual whose earning capacity is commensurate with his. More importantly, the plaintiff is claiming an arrearage in the amount of $78,453.49 (based on the defendant's annual salary increases) for the period of time from her son's eighteenth birthday to the present and an additional $6,343.75 in attorney's fees on the Motion for Contempt. Such a payment is clearly prejudicial to the defendant, not having been notified about any claim for same over the past eleven months. It is this court's opinion that the defendant clearly changed his position to his disadvantage when he relied on the parties' oral agreement. Based on that reliance he did not seek child support and he did not seek a modification of alimony.
Accordingly, this court finds that the two elements necessary to satisfy defendant's claim for laches have been met. Consequently, plaintiff is precluded from back alimony and future alimony due to laches, her failure to act in the last eleven years. Thus, plaintiff's Motion for Contempt is denied and defendant's Motion for Modification is granted.
2. Waiver and Estoppel
Since this court finds that the doctrine of laches applies, CT Page 6273 there is no need for the court to fully analyze the defendant's other arguments objecting to plaintiff's Motion for Contempt and supporting his Motion for Modification. This court would like, however, to briefly comment on the issue of waiver as it relates to defendant's motion to terminate alimony. When parties are in regular contact, as they were in this case, since the date of the divorce, the nonmoving party's inaction can be construed as a waiver. When one party relies on another's agreement and that reliance is to his detriment because someone does not act for a significant period of time, then a termination of the nonacting party's right is appropriate. See Lownds v. Lownds 41 Conn. Sup. 100
(1988) and Raymond v. Raymond, 6 Conn. L. Rptr. 15 (1992).
In this case there was convincing testimony by the defendant that not only were the parties in continual contact, but also that the plaintiff had just seen the defendant on the defendant's visit to Florida just weeks before the plaintiff served the defendant with the Motion for Contempt. Despite that recent meeting, the plaintiff never once mentioned to the defendant that she would be seeking back alimony or any future alimony payments. Because the plaintiff could have brought an earlier action against the defendant, and did not, this court finds that the defendant has waived her right to enforce the alimony agreement.Raymond, supra at 4.
Defendant's Motion for Modification is granted. This court finds that the plaintiff's failure to act over the past eleven years does constitute waiver and any future alimony payments are terminated.
III. CONCLUSION
The plaintiff's Motion for Contempt is denied. The equitable doctrines of laches and waiver apply. The plaintiff is not entitled to any arrearage on alimony payments which she sought eleven years after the last payment. The defendant's Motion for Modification requesting a termination of alimony is also granted. By not acting for the past eleven years, the plaintiff has waived her right to any future alimony payments.
Handy, J.