[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS #150, #169, #193, #199, #160, #163
Hearings were held and evidence was taken on July 27, 2000, July 28, 2000 and August 1, 2000 on various motions filed by the parties. This memorandum will address each of them.
I. PLAINTIFF'S MOTION FOR CONTEMPT — POST JUDGMENT (#150)
The following facts are found: CT Page 9576
The marriage of the parties was dissolved after an uncontested hearing was held on April 6, 1994 by a judgment entered on May 9, 1994. There were four children, issue of the marriage. They were Krissanne, born May 1, 1978; Nadia, born August 28, 1981; Peter, born October 13, 1983; and Marysa, born December 17, 1985. The separation agreement of the parties that was incorporated by reference in the judgment included the following pertinent provisions:
Article II — Custody and Visitation
2.1. The parties shall have joint custody of the minor children with the primary residence of the minor children vesting in the Wife and rights of liberal visitation in the Husband. . . .
Article III — Alimony and Support
3.1. Commencing upon the date of the entry of the decree of dissolution of marriage, the HUSBAND shall pay to the WIFE, as unallocated child support and alimony 50% of his gross base salary which is presently $85,000 per annum. The HUSBAND shall pay alimony on the 2nd and 17th day of each month. At the present time each alimony payment shall be $1,770.83. In addition to the unallocated alimony and child support payment, the HUSBAND shall pay to the WIFE 30% of any income, whether bonuses, commissions or otherwise which he may receive over and above his base salary, but not exceeding $150,000.00. The Defendant shall remit payment of said 30% sum within five days of receipt by him of payment. Against each check of $1,770.83 the HUSBAND shall be entitled to a credit of $831.98 until such time as the WIFE and children shall vacate 143 Minivale Road, Stamford, Connecticut which shall not be later than July 31, 1994. In the event that the WIFE shall vacate earlier, the unallocated alimony payments shall be prorated to the date that she vacates. In the event that during any calendar year the WIFE is insured, whether by HUSBAND or WIFE, as hereinafter set forth, by a plan which covers all of WIFE'S health and medical claims 100% the aforesaid 30% shall be reduced to 25%.
3.2 Alimony shall terminate upon the death of either party, the remarriage or cohabitation of the WIFE, or April 6, 2009, whichever shall first occur. Under no circumstances shall the WIFE be entitled to alimony after April 6, 2009 and the parties expressly agree that this limitation may not be modified.
3.3 Either party may apply to the Superior Court of the State of Connecticut for a modification of the alimony amount, without showing a change of circumstances not less than twelve years from the date of the entry of the Decree of Dissolution of Marriage. At that time, if either CT Page 9577 party should submit the issue of alimony to the court for review, the court shall take into account such criteria as prescribed by Connecticut General Statutes 46b-82 and in addition thereto shall take into account the respective parties' contributions to the college education and maintenance expenses of their adult children. The parties agree that the Court may modify, extend or terminate alimony upon the circumstances then existing, except as hereinbefore limited, but any extension of alimony shall be limited to 30% of HUSBAND'S gross base salary exclusive of bonuses and commissions.
After judgment entered, the plaintiff and the children remained in the marital residence located at 143 Minivale Road, Stamford, Connecticut. Although this property was awarded to the defendant in the judgment, the parties had agreed that the plaintiff and the children could reside there for a period of time no later than July 31, 1994, when they were to vacate the premises and move into living quarters selected by the plaintiff.
What occurred in August, 1994 was disputed by the parties, but the court finds the following: when the time came for the plaintiff to vacate with the children, she advised the defendant that it was his turn to care for the children. As a result the parties orally agreed that the plaintiff would move out of the marital residence. All the children would remain, and the defendant would move back into the home. They agreed that the defendant would be responsible for all of the children's living expenses, and the defendant would thereafter pay to the plaintiff for her support the sum of $938 twice a month. On August 19, 1994 the plaintiff moved out, and the defendant moved in. From that date on the defendant made payments to the plaintiff in accordance with their agreement. The defendant and the children continued living together since that date.
The defendant stopped making payments to the plaintiff in February, 1999. As a result thereof the plaintiff instituted a motion for contempt in March, 1999, which motion was amended on April 19, 1999 and is the motion presently before the court (#150). The motion recites the defendant's obligations under the judgment of dissolution for payment of unallocated alimony and child support and alleges the defendant has failed to make the payments in accordance with the judgment.
By stipulation of the parties, a partial hearing on the present motion was heard by the court, Kavanewsky, J. The hearing was limited to the court's calculation of the arrearage due if the defendant was at a subsequent hearing found to be responsible for payments in accordance with the terms of the separation agreement.
On January 27, 2000, Judge Kavanewsky issued his notice of decision. He CT Page 9578 computed the arrearage from 1994 through 1999. The total obligation due under the terms of the judgment was $377,670. Against that amount, there was a credit of $115,445 for payments made by the defendant. This resulted in a balance of $262,225.
The plaintiff claims that the defendant should be found in contempt, ordered to pay the arrearage plus cost and attorney's fees for bringing the motion.
The defendant's defense to this action is that the oral agreement between the parties modified their original agreement. He has asserted the defenses of equitable estoppel, laches and waiver.
The threshold question presented is whether or not there was an oral modification of the court order concerning payment of unallocated alimony and child support. As previously stated, the court has found that there was such an agreement. It is appropriate and significant for the court to state the basis of its conclusion. It offers the following:
(1) Evidence was clear that physical custody of the children passed to the defendant in August, 1994. A hearing was held on December 15, 1999 before the court, Hiller, J., at the request of the parties to determine with which parent the children resided since August, 1994. The court found that the children had their primary physical residence with the defendant father. The defendant claims the doctrine of collateral estoppel should apply to this issue, and the court agrees. Without the application of this doctrine, the court would have reached the same conclusion as the prior court did based on the evidence presented before this court.
(2) The plaintiff accepted payments from the defendant made in accordance with the terms of the oral modification agreement for a period of five years. She only sought relief from the court when the defendant stopped making payments in February, 1999.
(3) The defendant, since August, 1994, has furnished total financial support for the children in addition to his living with them and being responsible for their daily needs.
The plaintiff claims the defendant was away on business at least fifty percent of the time. The defendant admits to being away thirty percent of the time. The plaintiff claims that she spent a great deal of the time the defendant was away tending to the needs of her children, with much of the time spent in the defendant's residence when he was away. Although this may be true, the plaintiff offered no credible evidence that she made significant financial contributions to the support of the children. CT Page 9579 At best, she saved the defendant some child care expenses. The evidence furnished by the plaintiff indicated she had no excess funds for anything other than her own needs. She claimed her income was derived from support payments from the defendant together with a modest rental income. After payment of her rent, little was left for other expenses according to the plaintiff's own testimony.
(4) In the final analysis, credibility was a significant factor. The court found both parties less than credible in some aspects of their testimony. However, the court found the defendant the more credible on the question of an oral modification to their agreement.
The case of Bozzi v. Bozzi, 177 Conn. 232 (1979), considered the defense of equitable estoppel. It held:
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith, relied upon such conduct, and has been led thereby to change his position for the worse."
The Connecticut Supreme Court identified two essential elements which need to be present in order to succeed with an equitable estoppel defense. They are: 1) One party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and 2) the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.
The defendant has sustained his burden of establishing the defense of equitable estoppel. Although neither party sought a court ordered modification of the awarded unallocated alimony and child support, the parties orally agreed to alter the custody and support arrangements.
The plaintiff induced the defendant to change the living arrangements of the four minor children so that they would live with the defendant, and the plaintiff agreed to relinquish receiving future child support from the defendant.
The defendant, believing the plaintiff had agreed to this new arrangement, agreed to support the children and ceased making child support payments to the plaintiff. In reliance on the oral agreement, the defendant assumed physical custody of four children with all the obligations of a custodial parent of tending to the daily needs of the children, of furnishing emotional support and of furnishing full financial support. It is reasonable to conclude that the defendant would CT Page 9580 not have agreed to this arrangement if he had to pay to the plaintiff the full original obligation that included payments for the plaintiff's support and the support of their four children as if they resided with their mother and also fully support the children while they lived with him.
To determine the detriment to the defendant by his reliance on the plaintiff's agreement and inaction by her thereafter to indicate the situation was other than as agreed, the court performed the following analysis.
The court consulted the Connecticut Child Support guidelines in effect as of June 1, 1994 and August 1, 1999 to determine the family obligation for child support for the years involved in this case. It has charged the defendant with 100% of this obligation because the plaintiff has been unemployed since the dissolution of the marriage. The court used the gross income of the defendant as found by the decision entered by Judge Kavanewsky on January 27, 2000. It also reduced the gross income by 30% for the defendant's obligation for federal and state income taxes. The following results were obtained.
1994
 gross $ 63,000 net $ 44,000 per week $ 850 per guidelines (4) 46% $20,000
1995
 gross $177,400 net $124,180 week $ 2,400 per guidelines (4) 36% $44,600
1996
 gross $ 193,815 net $ 135,670 week $ 2,600 per guidelines (3) 32.7% $45,000
1997
gross $201,651 net $141,155 CT Page 9581 weekly $ 2,700 per guidelines (3) 32.7% $47,000
1998
 gross $148,095 net $103,666 week $ 2,000 per guidelines (3) 32.7% $34,500
1999
 gross $ 94,000 net $ 65,800 week $ 1,270 per guidelines (2) 29.72% (7 months) $19,000 27.72% (5 months) ________ total Child Support obligations 1994-1999 $210,100
In accordance with the Child Support Guidelines, the support needs of the children for the years 1994-1999 required $210,100. This total does not include the child care expenses of the defendant for the period of 1994-1997.
This exercise indicates approximately the quantitative calculation of the defendant's costs in reliance on the plaintiff's agreement to release the defendant from future child support payments if the defendant were now compelled to pay the plaintiff the arrearage of $262,225 as found by Judge Kavanewsky. It would be an injustice to require the defendant to pay the claimed arrearage when based on the promise and conduct of the plaintiff he had already paid his child support obligation.
The defendant has also claimed the defenses of laches and waiver.
Laches consists of two elements: First there must have been a measurable delay by one party, and second, that delay must have prejudiced the other party. Raymond v. Raymond, 6 Conn.L.Rptr. 15
(1992). Without repeating the evidence previously referred to, the court finds that the defendant has changed his position, in good faith, in reliance upon the plaintiff's non-action and that the defendant would suffer serious prejudice from enforcing the claim for arrearages. The plaintiff is guilty of laches.
Waiver is the "intentional relinquishment of a known right." Lounds v.Lounds, 41 Conn. Sup. 100 (1988). The evidence once again, has CT Page 9582 established that the plaintiff has waived her right to seek an arrearage by her inaction over the years. The court finds her explanation for not pursuing the matter as not being credible.
The court finds that the defendant is not in contempt and that there are no arrearages due the plaintiff through 1999.
The motion (#150) is denied.
NOVACK, JUDGE TRIAL REFEREE
 II. DEFENDANT'S MOTION FOR MODIFICATION OF UNALLOCATED ALIMONY AND CHILD SUPPORT, POST-JUDGMENT (#169)
The parties' marriage was dissolved by judgment entered on May 9, 1994. It incorporated by reference their separation agreement. Article III of the agreement provided for the payment of alimony and child support. The exact contents of that Article are set forth in the section of this memorandum dealing with the previous motion, #150.
Under the terms of the agreement the defendant was obliged to pay unallocated alimony and child support to the plaintiff for a term that was non-modifiable. Also, there was a restriction against seeking a modification as to amount until the passage of twelve years post dissolution.
Subsequent to the defendant's filing of the present motion, the plaintiff filed a motion to dismiss claiming that the court lacks subject matter jurisdiction to modify the unallocated alimony order. A hearing was held on the plaintiff's motion.
On January 11, 2000, the court, Hiller, J., in a memorandum of decision denied the plaintiff's motion to dismiss. The decision cited Amodeo v.Amodeo, 247 Conn. 724, 727-730 (1999), and Guile v. Guile, 196 Conn. 260
(1985) as authority for his conclusion. This court agrees with Judge Hiller's reasoning and finds it has subject matter jurisdiction in this matter.
The defendant alleges three reasons as to why there have been substantial changes in the circumstances of the parties since the judgment of dissolution of marriage was entered on May 9, 1994.
The first ground alleged is that the plaintiff is cohabiting as provided in Article III, Section 3.2 of the Separation Agreement so as to merit a suspension or termination of alimony. Section 3.2 provides CT Page 9583 alimony shall terminate, among other reasons, upon "cohabitation" of the plaintiff. The term was not defined in the agreement.
The defendant has failed to establish this claim either under the common law definition of the term or under the provisions of Connecticut General Statutes Section 46b-86 (b). Although there was some evidence of a relationship between the plaintiff and a male friend, the present relationship falls somewhat short of satisfying the requirements to establish this claim.
The second allegation made is that the plaintiff has not made reasonable and good faith efforts to be gainfully employed so as to maximize her earning potential and become self-supporting.
The court is puzzled by this claim as the defendant offered no further explanation as to the authority for this being a recognized basis for modification. Also, the only evidence presented on this was that the plaintiff has been unemployed since the dissolution. The defendant strikes out on this claim.
The final claim of the defendant is that he has had de facto physical custody of the four minor children since 1994 (two children now have attained the age of majority) notwithstanding the fact that physical custody was awarded to the plaintiff.
The court finds that there has been a substantial change of circumstances since orders were entered at the time the original judgment was entered.
The evidence presented in reference to the motion for contempt (#150) and discussed by this court in the section of this memorandum dealing with that motion as well as the evidence taken in reference to this motion indicate the following:
(1) All the children began residing with the defendant approximately three months after the marriage dissolution after they had been living with the plaintiff as was contemplated by the parties.
(2) The defendant has fully financially supported the children since their mother moved out and their father moved into the residence where they lived.
(3) Two of the four children have reached majority since the original order was entered.
(4) Since the original order was unallocated and it was agreed that the CT Page 9584 order included payment of alimony to the plaintiff plus payments for support for the children, the change of physical custody requires a determination of what an appropriate alimony order should be. The decision of who should pay child support and the amount thereof must be left for the future. That is because there is currently pending two motions by the defendant requesting the court's formalizing his having physical custody of the two minor children by making it a court order and a second motion seeking child support from the plaintiff.
The court has considered the criteria of Section 46b-82 of the General Statutes in reaching its decision of the periodic alimony award.
The award is partially based on the defendant's current annual gross earnings of $101,400 and $67,288 net. Also, the plaintiff's income consists of rental income from an investment property of $7,200 per year.
The plaintiff has the use of a credit card, courtesy of a male friend, but was vague and evasive as to what extent she uses it. She also has a "line of credit" with a limit of $25,000 from the same friend. In the future, if the defendant wishes to pursue the matter with additional information, he may seek a modification of the order entered at this time.
The defendant is currently paying the plaintiff as periodic alimony the sum of $938 twice a month for a total of $1876 per month. Under the circumstances, it appears to be an appropriate order at this time.
The defendant's motion is granted.
Effective November 3, 1999, the defendant shall pay the plaintiff as periodic alimony the sum of $1876 per month, payable $938 on the 2nd day of each month and $938 on the 17th day of each month. Alimony shall terminate upon the death of either party, the remarriage of the plaintiff, or April 6, 2009, whichever shall first occur. This order is subject to the provisions of Section 46b-86 (b) of the General Statutes. It is non-modifiable as to term, but modifiable as to amount during the term.
So Ordered.
NOVACK, JUDGE TRIAL REFEREE
 III. PLAINTIFF'S MOTION FOR CONTEMPT (#193) IV. PLAINTIFF'S MOTION FOR CONTEMPT — MOTION FOR ORDER (#199)
CT Page 9585
Both motions deal with the same issue.
On May 22, 2000, the parties appeared before the court, Harrigan, J., on the plaintiff's Motion for Contempt (#193). The court found that the defendant was not in contempt, nor did the defendant fail to reimburse the sum of $375 for unreimbursed medical expenses.
However, the court did order in accordance with the stipulation of the parties that the defendant owed an arrearage of $4,690, representing the five payments of $938 each due for the period February 17, 2000 through April 17, 2000.
The defendant failed to pay resulting in the Motion for Contempt — Motion for Order (#199) being filed and requesting an order of payment of the arrearage in a lump sum.
Since the order entered today on the defendant's motion for modification, effective November 3, 1999, is the same $938 per installment that was the subject of the order entered on May 22, 2000, no adjustment of the arrearage computation of $4690 is required.
The defendant is found not to be in contempt.
The defendant is ordered to pay the arrearage of $4690 in a lump sum no later than September 5, 2000.
So Ordered.
NOVACK, JUDGE TRIAL REFEREE
 V. DEFENDANT'S MOTION FOR MODIFICATION OF CUSTODY, POST-JUDGMENT (#160)
The court refers this matter for mediation by the Family Services Unit. If unsuccessful, counsel shall report to the Court to determine if a custody study and appointment for counsel of the minor children is required.
So Ordered.
NOVACK, JUDGE TRIAL REFEREE
 VI. DEFENDANT'S MOTION FOR CHILD SUPPORT, POST-JUDGMENT (#163)
CT Page 9586
This motion is marked off. It may be reclaimed after a decision on defendant's Motion for Modification of Custody (#160) is entered.
So Ordered.
NOVACK, JUDGE TRIAL REFEREE