JEANNE M. BOZZI *v.* FRANK S. BOZZI

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued December 13, 1978—decision released April 3, 1979

*Richard L. Goldblatt,* for the appellant (defendant).

*Morris I. Olmer,* for the appellee (plaintiff).

LONGO, J.   Upon the issuance of a divorce decree, the court awarded alimony, custody and support of two minor children to the plaintiff mother, and granted to the defendant father reasonable rights of visitation with the children.   The defendant complied with the support order of $30 a week for each child until June, 1966, when he ceased to make payments.   On December 2, 1974, the plaintiff brought a rule to show cause requesting a finding that the defendant was in contempt for his failure to pay pursuant to the order of support.   Thereafter, the defendant moved the court to vacate the support order, asserting that the plaintiff had deprived the defendant of his right to visitation.   The plaintiff's rule to show cause and the defendant's motion to vacate the support order were heard together.   The

court found the defendant in contempt and that the sum of $26,700 in unpaid support arrears was due to the plaintiff and denied the defendant's motion to vacate the support order. The defendant has appealed to this court from the judgment rendered.

The facts underlying the defendant's appeal are not in dispute: The plaintiff and the defendant, who had been separated for about four years, were divorced on May 5, 1965. Following the divorce, the defendant complied with the court order of support and regularly exercised his visitation rights with the children while the plaintiff lived in New Haven. The defendant visited with the children weekly, and the children frequently stayed overnight with the defendant. The plaintiff and defendant were on good terms in June, 1966, when the plaintiff accepted a proposal of marriage from a resident of Holland and agreed to move to Holland with the children. The plaintiff remarried in Holland on July 4, 1966. Prior to leaving Connecticut, the plaintiff did not inform the defendant of her intention to leave the country with the children because she did not want problems concerning the children and their support. About a month after her arrival in Holland, the plaintiff or her second husband first corresponded with the defendant and informed him where she and the children were living. In reply to this letter, the defendant wrote and expressed his chagrin at the clandestine manner of her departure and informed her that he had not yet decided whether to ask that a warrant be issued for her arrest for kidnapping if she should decide to visit the United States. On August 23, 1966, the plaintiff wrote to the defendant demanding child support payments and threatened legal action if the defendant did not comply with the support order.

Thereafter, the plaintiff, her children and her husband arrived for a visit in New York in October, 1966. The plaintiff and defendant had planned, by way of the exchange of numerous letters, to meet in New York. In those letters, the defendant said that he would send money for the support of the children, and would establish a trust fund for them; that he would like to have the children come to the United States for summer vacations, and that these subjects could be discussed when the plaintiff and children, along with the plaintiff's second husband, came to New York. When the plaintiff came to New York, however, the defendant failed to contact the plaintiff where she was staying. Thereafter, the defendant never tried to visit his children in Holland or to communicate with them. The defendant took no action with respect to their custody and ceased to pay support following October, 1966.

The trial court found that the plaintiff's second husband, a Mr. Drijver, was a man of means and financially able, and did, in fact, provide more than adequately for the plaintiff and the two children. The plaintiff and her husband bestowed the family name of Drijver upon the children, who called him "father" and were treated as part of his family. After her trip to New York in October, 1966, the plaintiff did not make any effort to enforce collection and did not contact the defendant again during any of her various trips to New York and Connecticut. In November, 1973, the plaintiff and her husband separated in Holland. The plaintiff returned to New York where she supported herself and the children by working at various jobs. While in New York she did not attempt to enforce collection of support payments or to have the children contact their father. The plaintiff, however, decided to seek

legal action to collect support payments after she became ill and could no longer work and provide for her children.

The defendant has briefed three assignments of error, claiming that the court erred (1) in concluding that the defendant was not justified in withholding support payments; (2) in failing to conclude that the plaintiff was guilty of laches; and (3) in failing to conclude that the plaintiff should be equitably estopped from asserting her claim.

## I

We first consider the defendant's claim that the trial court erred in concluding that the defendant was not justified in withholding support payments. The defendant claims error in the court's conclusion that "other persons" (the plaintiff and her second husband) were compelled to fulfill his obligation to support the children. He appears to argue that, while he was legally obliged to support his children, he was nevertheless excused from so doing since the plaintiff and her husband voluntarily provided support for the children. In this connection, the defendant also claims that the plaintiff abandoned or waived any right she had to continued support payments, "trading off" her support order for the defendant's abstaining from communicating with the children. These claims are without merit.

The defendant concedes in his brief that he made a decision in October, 1966, not to send support payments ordered by the court, and also concedes that when the plaintiff and children left for Holland, he was not at that time justified in withholding sup-

port payments. He claims, however, that the plaintiff's failure to allow visitation suspended or terminated his obligation to support the children. We disagree. It is elementary that, before an order as to custody or support of children may be modified, or support terminated, there must have been a "substantial change of circumstances" after the order was issued. General Statutes § 46b-86 (a); *Cleveland* v. *Cleveland,* 161 Conn. 452, 459–60, 289 A.2d 909 (1971); *Tippin* v. *Tippin,* 148 Conn. 1, 3, 166 A.2d 448 (1960); 24 Am. Jur. 2d, Divorce and Separation § 846. As the defendant attacks neither the court's finding that there was no significant change in the financial circumstances of the parties or of the children warranting modification of the divorce decree, nor the court's finding that the loss of the companionship of the children upon their removal to Holland was not a circumstance warranting modification, we take his argument to be that the plaintiff's and children's removal to Holland denied the defendant his rights of visitation and, of itself, constituted a substantial change of circumstances warranting modification of the support order.[1] It is, however, the law of this state that "[a] divorce decree which awards the custody of a child to one parent with permission to the other to visit the child at reasonable times and places but which does not expressly restrict the residence of the child, does not impliedly prohibit the removal of the child from the state." *Raymond* v. *Raymond,* 165 Conn. 735, 740, 345 A.2d 48 (1974). The obligation to comply with a divorce decree requiring sup-

---

[1] The defendant does not claim, nor could he, that the remarriage of the plaintiff was sufficient, standing alone, to constitute a change of circumstances warranting modification of the support order. See *Antedomenico* v. *Antedomenico,* 142 Conn. 558, 115 A.2d 659 (1955); cf. *Simons* v. *Simons,* 172 Conn. 341, 344, 374 A.2d 1040 (1977).

port payments has never, in this state, been conditioned upon the ability of the noncustodial parent to exercise rights of visitation. "The duty to support is wholly independent of the right of visitation." Id., 742.[2]

We cannot say, in view of our decision in *Raymond,* that the removal of the plaintiff and children to Holland, absent a showing that it had become financially burdensome for the defendant to exercise his right of visitation; *Raymond* v. *Raymond,* supra, 741; constituted a "substantial change in circumstances" requiring a modification of the support order. While it may have been preferable for the plaintiff to have obtained an order from the court authorizing the removal of the children from the state; see *Lawrence* v. *Lawrence,* 85 R.I. 13, 17, 125 A.2d 218 (1956); it is nonetheless true that the defendant's right of visitation is not an absolute right. See *Lewis* v. *Lewis,* 338 Mich. 197, 201, 61 N.W.2d 66 (1953). The willingness of the plaintiff's second husband to take care of the children's needs did not relieve the defendant from the performance of his own obligations, absent an agreement with the plaintiff or a court-ordered modification, upon motion duly granted. The defendant never sought such a modification until the plaintiff filed the present action. We find no error in the court's conclusion with respect to the defendant's improper withholding of support payments.

---

[2] Compare *White* v. *White,* 138 Conn. 1, 81 A.2d 450 (1951), wherein we held that a father's liability for support was suspended under common-law principles where his wife left him, taking their child. Unlike *White,* however, we deal in the present case not with common-law principles, but with visitation rights and support obligations under a court order, promulgated pursuant to statute.

## II

The defendant next contends that the court erred in failing to conclude that the plaintiff was guilty of laches for her failure to seek payment of the court-ordered support of the two children. He claims that the lapse of eight or nine years was an unreasonable and inexcusable delay in seeking relief.

Laches consists of two elements. "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 685, 116 A.2d 906 (1955); *Kievman* v. *Grevers*, 122 Conn. 406, 411, 189 A. 609 (1937); 27 Am. Jur. 2d, Equity § 152.[3] The mere lapse of time does not constitute laches; *Finucane* v. *Hayden*, 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am. Jur. 2d, Equity § 163; unless it results in prejudice to the defendant; see *Leary* v. *Stylarama of New Haven, Inc.*, 174 Conn. 217, 219, 384 A.2d 377 (1978); *Bianco* v. *Darien*, 157 Conn. 548, 556, 254 A.2d 898 (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. *Pukas* v. *Pukas*, 104 R.I. 542, 545-46, 247 A.2d 427 (1968).

---

[3] "Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel . . . against the assertion of the right." 2 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 419d, pp. 178-79.

In the present case, the sole prejudice claimed by the defendant was that he had been deprived of the love and companionship of his children for eight years and that he and his children were entitled to each other's love and companionship. While we are not unmindful that the loss of his children's companionship greatly affected the defendant and caused him remorse, we must respond to his contention by our reference to the law in this jurisdiction that the plaintiff was not prohibited from removing the children to Holland without his permission. *Raymond* v. *Raymond,* supra, 742. Nor should we overlook the trial court's finding that the very last communication between the parties indicated that the defendant would meet his obligation by sending money or by establishing a trust fund for the children and that he would see to their education, none of which was done. The court found that the lack of any communication between the parties for about eight years, a lapse for which the defendant was at least equally responsible, might have been significant in supporting a claim of laches if there were any evidence that the defendant had changed his position in reliance upon an abandonment by the plaintiff of her claim against him. A conclusion that a party has not been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. *Kurzatkowski* v. *Kurzatkowski,* supra, 684. Nothing in the court's finding discloses the prejudice to the defendant necessary to support a defense of laches. In view of the court's finding that the plaintiff made an initial demand for support, and again demanded support when she alone no longer could maintain herself and the children,

and in view of the failure of the defendant himself to take any action to modify the order of support during the plaintiff's absence, we cannot say that the court erred in concluding that the plaintiff was not guilty of laches.

## III

Much of our discussion in the previous section is germane to the defendant's final contention that the court erred in failing to conclude that the plaintiff was equitably estopped from asserting her claim for past and future support for the two children.[4]

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 804, p. 189; 28 Am. Jur. 2d, Estoppel and Waiver § 76; accord, *Spear-Newman, Inc.* v. *Modern Floors Corporation*, 149 Conn. 88, 91, 175 A.2d 565 (1961);

---

[4] In his brief, the defendant argues that the plaintiff participated in a "de facto adoption," in that if there had been an express agreement for adoption of the children by the plaintiff's second husband, Drijver, the children would have terminated their relationship with their natural father, thereby relieving him of his financial obligation. He argues that the conduct of the plaintiff and her husband, as shown by the fact that the children used the Drijver name and were treated as members of the Drijver family, and that he willingly and adequately supported the children, lacked only a formal consent by the defendant and a court order approving the adoption. We find no merit to the defendant's concept of "de facto adoption," nor does the defendant provide any authority therefor. Accordingly, we consider only the question whether the plaintiff's own conduct, as found by the court, constituted equitable estoppel which precluded her from enforcing her claim for accumulated payments of support for the children.

*Tradesmens National Bank of New Haven* v. *Minor,* 122 Conn. 419, 424, 190 A. 270 (1937); *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783 (1934). Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777 (1968); *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797 (1962); see *Bealle* v. *Nyden's, Inc.,* 245 F. Sup. 86, 93–94 (D. Conn. 1965); 28 Am. Jur. 2d, Estoppel and Waiver § 27, p. 627.

The trial court found that the defendant had not changed his position in reliance upon the plaintiff's temporary nonenforcement of the order of support. The court found, moreover, that the defendant knew of the plaintiff's living in Holland; that he knew that the plaintiff demanded support; that it was the defendant's decision to start a new life without the children after October, 1966; and that he never telephoned, wrote or otherwise contacted the children, although he knew exactly where they were. We find nothing in the record to indicate that the defendant's decision to terminate support payments was induced by any representation made by the plaintiff. The defendant's decision was, on the contrary, based upon the erroneous belief that the plaintiff's removal of the children was illegal, and on his decision to start a new life after their departure. It is difficult to conceive of any manner in which the defendant "relied" upon the plaintiff's conduct, as he knew nothing of her situation for almost nine years. In such circumstances, we can-

not say that the court erred in refusing to conclude that the plaintiff was equitably estopped from asserting her claim for support.

There is no error.

In this opinion the other judges concurred.