[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 27, 1996
On June 10, 1996 the plaintiff filed an application for order to show cause why the defendant should not be found in contempt for failure to pay certain monies by way of unallocated alimony and support as provided in the judgment of dissolution of marriage and that the defendant has failed to establish and fund a trust for the education of the children also as provided in the judgment. The defendant has filed an objection thereto. This matter was heard by the court on July 11, 1996, was thereafter briefed by the parties with a brief filed by the plaintiff on July 19 and responding brief filed by the defendant on July 26 and final arguments on July 29.
On February 8, 1989 a decree of dissolution of marriage was entered before Mihalakos, J. At that time an agreement entered into by the parties on April 20, 1988 was submitted to the court and fully incorporated in the judgment as to all matters contained therein. Paragraph 8 of that agreement provides as follows:
 8. Alimony and Child Support. Husband shall pay to wife as unallocated alimony and children support the amount of Four Thousand, Five Hundred Dollars ($4,500.00) per month.
Paragraph 15 of the agreement provides as follows:
 15. Education Fund. Irrespective of the wife's remarriage or independent income, the husband shall, in every calendar year when his gross earnings exceed Seventy Five Thousand Dollars ($75,000.00) set aside not less than Ten Percent (10%) of his gross income for each year in a special college and posthigh school education fund for the children. The form of such fund shall be an irrevocable trust in the joint control of husband and wife. If, when the children reaches the age of 25 years, the fund for the children has not been used for college or posthigh school education, so much thereof as has not been thus CT Page 5640 used shall be turned over to the husband. In the event that the children dies before her portion of the fund, or so much thereof as remains, shall be returned to the husband. In the event of default by the husband in setting up and paying into the education fund the amounts provided in this section, the wife shall have the same remedies for the collection of such amounts as she has generally for the collection of the amounts collected in a separate education fund for the purposes herein specified.
 However, should husband's gross income fall Twenty Percent (20%) below that of the proceeding year, the husband shall not be liable for contribution to the fund in the year discovery of such decrease is determined.
Paragraph 20 provides for modification and waiver as follows:
 20. Modification and waiver. This agreement shall not be modified or annulled by the parties hereto except by written instrument, executed in the same manner as this instrument. The failure of either party to insist upon a strict performance of any provision of this agreement shall not be deemed a waiver of a right to insist upon a strict performance of such provision or of any other provision of this agreement at any time.
The agreement is signed by each of the parties. There are no witnesses nor did the parties acknowledge the same before a Notary Public or Commissioner of the Superior Court.
Based upon the testimony offered by the parties, the court finds that the plaintiff remarried on or about June 23, 1990. The defendant, in accordance with the court's judgment, paid the plaintiff $4500 per month until July 1990. Thereafter, the defendant paid $2,000 per month, $1,000 for each of the two minor children, contending that the parties entered into a signed agreement in July 1990, agreeing to such a reduction. The parties have stipulated that the amount of arrearage at $2500 per month for 72 months to June 30, 1996 amounts to $180,000. To this amount must be added the months of July, August and September 1996, for a total of $187,500. CT Page 5641
A trust was never established as required by Paragraph 15 of the parties' agreement. The defendant did, however, establish two accounts in his own name which he claims are the funds for the children's education. The defendant remarried June 17, 1995, and it was shortly after that date that difficulty between the parties began to arise. (See defendant's exhibit 4.)
As is often true in these situations, the court is faced with a question of credibility. It is the defendant's contention that the parties entered into a written agreement in July 1990, agreeing that the $4500 unallocated award shall be reduced to $2,000 support. (See defendant's exhibit 2.) The plaintiff has testified that: she did not sign this document, and that she never saw this document until July 6th, shortly before the hearing date on July 11th. She produced checks to demonstrate that the signature thereon was not her signature, and since the signature appearing is "Laurie Nelson," she stated that after her marriage she would not have signed "Laurie Nelson" but rather "Laurie Nelson Austin" or "Laurie Austin," her married name. The defendant testified that the parties discussed the issues of alimony and support with Mr. Austin, her then fiancee, prior to the marriage. He testified that he typed the letter agreement and that the plaintiff signed the agreement in his presence. He further denied that he signed her name.
It is to be noted that plaintiff's attorney filed a Motion for Modification dated August 2, 1990 on August 10th. This motion recited that the defendant in July 1990, "tendered unallocated child support and alimony in the amount of $2,000." The motion sought to reduce the order for unallocated alimony and child support to $1500 per month. Plaintiff testified she knew nothing about this motion. Defendant testified he received a copy of the motion from plaintiff's attorney and thought that the modification in accordance with the letter agreement had been entered by the court.
While the motion does not refer to the letter agreement, it does refer to the reduction in monthly payment from $4500 to $2,000. It seems curious that this motion was filed if the letter agreement was not executed as defendant has testified. The court also notes that the plaintiff's signature on the letter agreement compares with her signature on the Separation Agreement of April 20, 1988. The court finds, therefore, that the parties entered into an agreement amending the agreement of April 20, 1988 in CT Page 5642 July 1990, providing for the termination of alimony and for child support in the amount of $1,000 per month per child. The court also finds that the defendant reasonably believed that the judgment of February 8, 1989 had been changed accordingly. He had represented himself at the time of the original decree and was not represented at the time of the letter agreement.
As to the second prong of the plaintiff's motion for modification, that is that the defendant has failed to establish the trust for the children's education, it is true that no such trust had been established and that no accounts in the joint names of the parties have been established. However, the defendant has established accounts which he claims are for the children's education. While the defendant's annual contribution to these accounts was on the basis of ten percent of his adjusted gross annual income in excess of $75,000, nevertheless, the court finds that this was not an intentional disregard of the court's orders.
For the defendant to be found in contempt, the plaintiff must show that there has been noncompliance and such noncompliance was willful. See Meehan v. Meehan, 40 Conn. App. 107 (1996); Marcil v.Marcil, 4 Conn. App. 403, 405 (1985). Where there are good faith disputes or legitimate misunderstandings, a contempt will not lie. Connolly v. Connolly, 191 Conn. 468 (1983). There are such good faith disputes and legitimate misunderstandings in this case. The motion for contempt is, therefore, denied and the objection to the motion for contempt is sustained.
However, there yet remain numerous issues raised by the parties regarding the issues of arrearage on the original orders, issues of waiver, laches and estoppel claimed by the defendant, interpretation of the language of paragraph 15 of the parties' agreement of April, 1988, the establishment of the education trust, the amount by which this trust should have been funded, and attorneys fees pursuant to § 46b-62 of the General Statutes.
Even with the private agreement of the parties, the same does not affect the decree. Lownds v. Lownds, 41 Conn. Sup. 100 (1988); citing Brock v. Cavanaugh, 1 Conn. App. 138, 141 (1984). The order of alimony and support can be modified only by the court. The defendant, however, may still prevail in his assertion that no arrearage is due if he can prevail on any of his defenses that the plaintiff's claim is barred by estoppel, waiver or laches. CT Page 5643
 Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. Emerick v. Emerick, 28 Conn. App. 794, 802 (1992). See also, Bozzi v. Bozzi, 177 Conn. 232, 241 (1979); Brock v. Cavanaugh, 1 Conn. App. 138, 141-42 (1984).
There are two essential elements of equitable estoppel which are as follows:
 . . . one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. Emerick at 803, Bozzi at 242, Papcun v. Papcun, 181 Conn. 618, 621 (1980).
 Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. The mere lapse of time does not constitute laches; unless it results in prejudice to the defendant; as where, for example, the defendant is led to change his position with respect to the matter in question. Emerick v. Emerick, 28 Conn. App. 794 at 803-04; Bozzi v. Bozzi, 177 Conn. 232
at 239; Papcun v. Papcun, 181 Conn. 618 at 620-21.
It is the defendant's claim that his reliance upon the motion to modify having been granted that he did not file his own motion for modification.
As to waiver, waiver is the intentional relinquishment of a known right. Olean v. Treglia, 190 Conn. 756, 773 (1983); see also, Bozzi v. Bozzi, supra. The defendant's claims that, by accepting payments of $2,000 per month for a period of approximately six years without comment or complaint, the CT Page 5644 plaintiff has waived her rights under the original judgment. In support of his contention, the plaintiff cited the case ofDiBiaso v. DiBiaso, 17 Conn. Sup. 483 (1952). The plaintiff argues that because of the provisions of paragraph 20 of the parties' agreement of April 20, 1988, there can be no waiver. However, since the court has found that the parties amended this agreement as to paragraph 8, query whether there continues to be non waiver. In view of the court's ruling with respect to the defenses of laches and estoppel, the court shall not rule on the defense of waiver since waiver may not lie because of the provisions of paragraph 20 of the parties' agreement.
The court finds that the defendant has changed his position, in good faith, in reliance upon the plaintiff's nonaction and that he would suffer serious prejudice from enforcing past unallocated alimony and support arrearages. Plaintiff's motion, therefore, seeking past due alimony and support arrearages is denied. The court's ruling of laches differs from the court's ruling in Bozzi, supra, but compares to the court's ruling inRaymond v. Raymond, 6 CONN. L. RPTR. 15 (1992).
On the defense of estoppel, the court finds that the defendant relied on the parties' written modification of agreement. The court also finds that the defendant changed his position by not paying the $4500 per month, but rather the amount of $2,000 per month as provided in the written modification of agreement. The court finds, therefore, that the plaintiff is equitably estopped from seeking an order for arrearage.
Remaining for consideration is the issue regarding the education fund as provided in paragraph 15 of the agreement of April 20, 1988. The language of paragraph 15 is clear and unambiguous on its face. "The interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot . . . disregard the words used by the parties or revise, add to, or create a new agreement." Klein v. Klein,3 Conn. App. 421, 422, 423 (1985).
The defendant has made contributions to the two accounts that he says he has maintained as the funds pursuant to the "Education Fund" in an amount equal to ten percent: of his gross income as exceeds $75,000 per year. However, the plain language of the agreement provides that for those years in which his gross earnings exceed $75,000 he shall ". . . set aside not less than Ten percent (10%) of his gross income for each year in a special CT Page 5645 college and posthigh school education fund for the children."
Those years in which the defendant's gross earnings have exceeded $75,000 are the years 1990 through and including 1995.
The parties' agreement speaks in terms of "gross earnings" and "gross income." The issue for the court to determine, then, is what constitutes gross earnings and gross income. The defendant contends that it is equivalent to adjusted gross income for federal income tax purposes. However, a deduction for depreciation is not a real expense. Should it, therefore, be deducted in arriving at adjusted gross income? What deductions should be allowed, if any, in determining the profit from self-employment earnings? Should this phrase not include tax free income?
The term "gross income" has been interpreted by the State of Connecticut in its Child Support and Arrearage Guidelines as including but not limited to:
1. salary and wages including overtime;
2. commissions, bonuses, tips and perquisites;
3. rental income after deduction of reasonable and necessary equipment;
4. estate or trust income;
5. royalties;
6. interest, dividends and annuities;
7. Social Security, retirement, pension and other benefits;
8. net proceeds from contractual agreements;
9. self-employment earnings after deduction of all legitimate business expenses;
10. alimony being paid by an individual who is not a party to the support determination;
11. unearned income from all sources; and,
12. in kind compensation. CT Page 5646
Gross income has also been defined in the Internal Revenue Code at Section 61 as:
1. compensation for services including fees, commission, fringe benefits and similar items;
2. gross income from business;
3. gains from dealings in property;
4. interest;
5. rents;
6. royalties;
7. dividends;
8. alimony and separate maintenance payments;
9. annuities;
10. income from life insurance and endowment contracts;
11. pensions;
12. income from discharge of debt;
13. partners' share of partnership income;
14. income in respect of a decedent; and,
15. income from an interest in an estate or trust.
The court adopts the definition of gross income as set forth in the Child Support and Arrearage Guidelines. To the amounts as set forth in items 1-12 must be added capital gains and those business expenses which do not fall within the definition of "legitimate business expenses."
The defendant is self-employed in the insurance business selling health, life and personal insurance and as an investment consultant. He receives W-2 income, but most of his earned income is reflected in Schedule C of his federal tax returns. CT Page 5647 Unfortunately, he has destroyed Schedule C of all of his tax returns except for his 1995 return. The court has ordered that he execute an authorization so that his tax returns for the years 1988 to and including 1994 will be obtained.
Unfortunately, Schedule C which would show the defendant's expenses claimed as deductions to arrive at net profit are not presently available except for 1995. It is impossible, therefore, to determine the legitimate business expenses for the years 1990 to 1994. It is clear that depreciation expense in each year should be added back. The court disagrees, however, with plaintiff's counsel disallowing deductions for car and truck expenses, travel, meals and entertainment. There has been no evidence to demonstrate that these expenses are other them legitimate business expenses.
Ten percent of the total gross income for each year is found as follows:
1995 $22,371
1994 $19,455
1993 $16,980
1992 $14,321
1991 $13,643
 1990 $9,144 -------- TOTAL $95,914
In each year, except for 1995, ten percent of any deduction for depreciation should be added. The tax returns for 1988 and 1989 show gross income of less than $75,000 for those years.
To the amounts listed above should be added the amount Massachusetts Mutual Insurance Company has contributed to the defendant's 401(K) plan of $9,000 per year commencing 1992 through 1995 or $36,000, an additional amount, therefore, of $3600. Massachusetts Mutual has also contributed $33,000 to the defendant's pension plan each year since 1992. This results in an additional amount of $1320. The defendant's SEP was funded with money from the defendant's gross income and should not be added to arrive at the figure for funding the education fund. The pension contributions and 401(K) contributions by Massachusetts Mutual were in addition to amounts paid to the defendant as reported on his W-2. Pension and retirement benefits are included in gross income under the Child Support and Arrearage Guidelines and should properly be included in the definition of gross CT Page 5648 income.
Adding, then, all of the above figures, the defendant's contribution should have been $112,714. The defendant has funded the education fund in the total amount of $97,019.30. There is an underfunding, therefore, of $15,695.
Plaintiff's counsel seeks counsel fees. The court has not found the defendant in contempt so counsel fees pursuant to §46b-87 are not in order. However, the defendant may be found to be responsible for the plaintiff's attorneys fees in whole or in part pursuant to § 46b-62 of the General Statutes. While plaintiff's counsel has filed an affidavit setting forth fees and disbursements of $11,239.82 and stipulated further services of $1400, the court must consider the factors of § 46b-82 of the General Statutes. The court orders that the parties exchange financial affidavits and file the same with the Clerk's office within one week of the date hereof. Further proceedings must be held on this matter. Counsel should be in touch with the undersigned's clerk to arrange a convenient date for counsel and the court.
The court rules as follows:
1. The motion for contempt is denied. The objection to the motion for contempt is sustained.
2. The plaintiff's request for an arrearage determination on the orders for unallocated alimony and support is barred by laches and the plaintiff is equitably estopped from seeking such an arrearage.
3. The court finds an arrearage in funding for the educational fund as required by paragraph 15 of the parties' agreement of April 20, 1988, and incorporated in the judgment of February 8, 1989. The court finds an arrearage of $15,695. The arrearage as determined shall be increased by ten (10%) percent of the depreciation deduction taken for the years 1990 through and including 1994.
4. The court orders the defendant to establish an irrevocable trust with the plaintiff and defendant as trustees, the other provisions thereof in accordance with the provisions of paragraph 15 in a form acceptable to the parties and their attorneys. If there is any dispute or difference between the parties with regard to the same, they shall return to court for further orders. The securities and investments constituting plaintiff's exhibits I and J shall be deposited into the trust account. The defendant shall, in addition to the amount computed for 1996 to be deposited, shall deposit half the sum determined as an arrearage in the year 1996 on or before December 31 of this year and one hall of said sum in 1997 on or before December 31, 1997.
Orders shall enter in accordance with the foregoing.
BASSICK, J.
CT Page 5649