[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
A decree dissolving the marriage of the parties in this action was entered on September 18, 1995. At that time the separation agreement entered into by the parties dated August 4, 1995 was approved and incorporated by reference into the judgment. Paragraph 2 of the agreement provided that the plaintiff would retain the property at 1 Heritage Road, Columbia, and, upon the sale of the premises, the defendant shall receive the lesser of 50% or $5,000 of the net proceeds. If the property was not sold within 5 years, the plaintiff was to pay the defendant $5,000. Pursuant to paragraph 4 of the agreement, the plaintiff was also to assume responsibility for the GM charge card, among others, while the defendant assumed responsibility for other charge accounts. Both parties were to "hold each other harmless from liability on the above-referenced bills."
The defendant has filed an amended motion for contempt dated March 27, 2001 in which he claims that the plaintiff has failed to pay the $5,000 due under paragraph 2 of the separation agreement and that she has paid the GM credit account.
At the time that this motion was heard by the court on May 9, 2001, the court held that the plaintiff was in contempt for her wilful failure to pay the $5,000 owed to the defendant. The court found that the house was sold in January 2000 and the plaintiff netted approximately $22,000 from the sale. The plaintiff did not pay the defendant the $5,000 owed under the decree at that time but instead used the proceeds to purchase another residence. The plaintiff believed that she had until the end of 2000 to pay the defendant and, because she was earning $65,000 per year, felt she would have no problem paying the defendant at that time; but by the end of 2000 the plaintiff had still not paid the defendant. Even after being served with the contempt motion in January 2001, and her receipt of approximately $19,000 in severance pay in February 2001, she still failed to pay the $5,000 required by the judgment. Although during late 1999 and 2000 the plaintiff experienced significant health issues, those issues did not interfere with her ability to pay the $5,000 due the defendant. As a result, she was found to be in contempt and she was ordered by the court to pay $2,500 on the day of the hearing and the remaining $2,500 by June 11, 2001. The court reserved decision on whether the plaintiff was CT Page 7200 in contempt for her failure to pay the GM credit card. The court also reserved decision on the defendant's request for attorney's and sheriff's fees.
At the time of the judgment, the GM credit card was listed on the plaintiff's financial affidavit as having a balance due of $5,700. Including the GM card but excluding the mortgage, the plaintiff agreed to pay a total of $8,500 in debts. The balance of the debts assumed by the defendant, as listed on his financial affidavit at the time of the judgment, totaled $11,820.
Despite the provision (paragraph 2) in the separation agreement, that the wife shall hold the husband harmless from liability on the mortgage debt secured on the Columbia premises, even before the dissolution, the defendant agreed to pay one-half of the mortgage payments in order to protect his interest in the equity. Subsequent to the dissolution, in June of 1996, the defendant advised the plaintiff that he could no longer pay one-half of the mortgage and instead agreed to pay the GM credit card in order to ensure that the plaintiff could pay the mortgage. The defendant did not expect repayment from the plaintiff for these amounts. The plaintiff claims that at this point the defendant agreed to assume total responsibility for payment of the GM credit card while the defendant claims that he stated to the plaintiff that he would just help her out temporarily by making the payments on the GM card. Subsequent to June of 1996, the plaintiff did not received any bills from GM regarding the credit card. From March of 1997 to November of 1997 the defendant made five payments on the credit card totaling approximately $1,300. He claims that he then spoke to the plaintiff in November of 1997 and advised her that he could no longer pay the credit card and that she would have to assume the payments on the card. He further advised her that he had worked out an arrangement with GM whereby they would accept payments of $70 per month on the card. The plaintiff denies that this conversation took place. The plaintiff claims that she was not aware of the delinquency on the GM credit card until she was served with the motion for contempt in January 2001.
The plaintiff claims that she should not be held in contempt for her failure to pay the GM credit card and that the defendant's delay of over three years in seeking to enforce the judgment against her constitutes laches and that his agreement to pay the credit card constitutes a waiver of his rights under the judgment.
 Laches consists of two elements. "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, CT Page 7201 116 A.2d 906 (1955); Kievman v. Grevers, 122 Conn. 406, 411, 189 A. 609 (1937); 27 Am.Jur.2d, Equity 152. [FN3] The mere lapse of time does not constitute laches; Finucane v. Hayden, 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am.Jur.2d, Equity 163; unless it results in prejudice to the defendant; see Leary v. Stylarama of New Haven, Inc., 174 Conn. 217, 219, 384 A.2d 377 (1978); Bianco v. Darien, 157 Conn. 548, 556, 254 A.2d 898 (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. Pukas v. Pukas, 104 R.I. 542, 545-46, 247 A.2d 427 (1968).
Bozzi v. Bozzi, 177 Conn. 232, 239 (1979).
There was no evidence presented as to any prejudice to the plaintiff from the delay in the failure of the defendant to enforce the judgment against her and require that she pay the GM credit card bill. The plaintiff did not assume any additional burdens not already required under the judgment as a result. She stated only that she thought it wasn't "fair" that the defendant be allowed to enforce the order against her now.
In Bozzi the defendant claimed the plaintiff was guilty of laches for her failure to seek payment of the court-ordered support of the couple's two children over a eight or nine year period and that such a delay was unreasonable and inexcusable such that the court should not find him in contempt. The court upheld the decision of the trial court finding the defendant in contempt noting that there was nothing in the trial court's finding which disclosed any prejudice to the defendant necessary to support the defense of laches.
The plaintiff also argues that the defendant has waived his right to require that the plaintiff pay the GM credit card. Waiver involves the intentional relinquishment of a known tight. "A waiver occurs, therefore, only if there is both knowledge of the existence of the right and intent to relinquish it. Novella v. Hanford Accident IndemnityCo., 163 Conn. 552, 562, 316 A.2d 394 (1972); see 16B J. J. Appleman, Insurance Law and Practice (1981) § 9081, p. 491." Heyman AssociatesNo. 1 v. Insurance Co. of Penn., 231 Conn. 756, 777 (1995). Pursuant to the judgment, the defendant had a right to have the plaintiff hold him harmless from liability on the GM credit card. His voluntary assumption of payment of some of the sums due under the card as an accommodation to the plaintiff cannot be viewed as a waiver of his rights under the judgment. In fact, the separation agreement itself provides, in paragraph 11, that "(n)o modification or waiver of any kind of the terms of this CT Page 7202 agreement shall be valid unless in writing and executed with the same formality of this agreement except by Order of the Court." The defendant's actions did not constitute waiver either as a matter of law or pursuant to the express terms of the judgment.
"It is clear that `to constitute contempt, a party's conduct must be wilful. Connolly v. Connolly, 191 Conn. 468, 483, 464 A.2d 837
(1983) . . .'" Sablosky v. Sablosky, 61 Conn. App. 66,72 (2000). Here the plaintiff was under the mistaken impression that she was no longer liable to pay the GM credit card and had not received any bills from the company for some time. Therefore the court does not find the plaintiff in contempt for her failure to pay the credit card but does find that she owes an arrearage on the GM credit card.
In fashioning an appropriate remedy here the court is constrained by the lack of any evidence, despite the court's specific request that it be provided, as to the present amount of the GM debt. Nor was any evidence produced by either party as to whether there may be additional charges posted to the account after the dissolution for which the plaintiff may not be responsible.[1] The only evidence as to the amount of the debt to GM is the amount set forth in the plaintiff's financial affidavit dated September 18, 1995 and filed at the time of the dissolution. Consequently the court finds that the plaintiff owes an arrearage of $5,700 plus accrued interest since the date of the dissolution for the debt to GM. That arrearage shall be paid within 12 months. The plaintiff shall also pay to the defendant within 60 days the sum of $1,085 in attorney's and sheriff's fees.[2]
BY THE COURT,
Jane S. Scholl, Judge