[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR CONTEMPT #114 AND PLAINTIFF'S MOTION TO MODIFY ALIMONY #116
Many of the facts that give rise to the above two motions are not in dispute. The marriage between the parties was dissolved on May 30, 1985. On that date the court ordered the plaintiff to pay to the defendant support for the minor child in the sum of $125 weekly, and periodic alimony in the sum of $125 weekly terminating on the death of the payor or remarriage or death of the payee. The minor child of the parties, Jessica Page, was born on September 12, 1975 and became 18 years of age on September 12, 1993. The plaintiff was current in his support payments through September 12, 1993 and was current in his alimony payments through September 30, 1993. On November 6, 2000, the parties entered into the following agreement:
 The plaintiff agrees to pay to the defendant the sum of $1,000 towards any arrearage order that the court may find. The plaintiff agrees to pay the sum of $75 per week as alimony without prejudice to either party beginning November 10, 2000 until further order of the court.
The plaintiff paid the $1,000 and has paid the $75 weekly between November 10, 2000 and March 12, 2001. The total amount of alimony due under the court order for the period of September 30, 1993 to November 6, 2000 was for 7 years and five weeks for a total of $46,125. From that amount the plaintiff is entitled to a credit for the $1,000 that he paid in accordance with the stipulation of the parties of November 6, 2000. He had also made various sporadic payments to the defendant totaling $1,295.69. After crediting the $1,295.69 and $1,000, the balance due from the plaintiff to the defendant as of November 10, 2000, would be $43,829.31.
The court finds the following additional facts. After the child turned 18 the plaintiff told the defendant that he would not pay any further amount of alimony. The defendant did not seek to enforce the alimony order because she had been told by her daughter and another person that the plaintiff was not working. The plaintiff, in fact, was disabled between 1992 and 1997 as a result of four operations to his wrist and one operation to his left shoulder. He received weekly disability payments as a result of the work related injury to his left shoulder between 1992 and 1994 in the range of $439 to $759 weekly. No credible evidence was CT Page 7222 presented as to the number of weeks during which he only received $439 and the number of weeks during which he received $759 or to the total amount he received between 1992 and 1994.
The plaintiff claims that there should not be any arrearage on the grounds of waiver, estoppel and laches.
These claims will be considered seriatim:
A. Waiver
Waiver is defined as the intentional relinquishment of a known right. The plaintiff claims that the defendant agreed to give up any claim for alimony after the minor child turned 18 as a result of promises by her family to support her. The defendant denies that any such agreement was made by her. The court finds the defendant to be more credible on that issue and finds that she never agreed to relinquish her right to received alimony.
B. Estoppel
In Bozzi v. Bozzi, 177 Conn. 232 (1979), the court stated in part as follows regarding equitable estoppel:
 Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.
The plaintiff invested approximately $49,000 that he received in workers' compensation payments for a permanent partial disability in 1997 to purchase a new residence. He further claims that he purchased that residence believing that the defendant would not seek alimony payments from him. The court finds that his claim that he would not have invested that money into the residence on his belief that the defendant would not seek alimony payments from him is not credible. The court also finds that the failure of the defendant to seek alimony payments was not intended or calculated to induce the plaintiff to believe that alimony payments would not be sought from him.
The court therefore finds that equitable estoppel does not apply to this case. CT Page 7223
C. Laches
Laches has been defined by our state Supreme Court in Kurzatkowski v.Kurzatkowski, 142 Conn. 680 (1955) as consisting of two elements:
 First, there must have been a delay that was inexcusable, and, second that delay must have prejudiced the defendant.
The court finds that in this case the delay in seeking the alimony payments is excusable as it was based on the defendant having been told that the plaintiff was not employed. Further, the delay did not prejudice the plaintiff. The plaintiff claims that he would have been able to obtain a modification or termination of alimony had he made such a request at an earlier date. The court finds that that claim is also not credible. The court finds that when the dissolution of marriage was entered on May 30, 1985 that the plaintiff had gross weekly income of $648.20 and a net weekly income of $457.11. During various periods of time between 1992 and 1997 he was receiving workers' compensation benefits between $439 and $759 weekly. No credible testimony was presented as to the length of time that he received the $439 weekly and $759 weekly. Therefore, there would not have been a modification of the alimony order based on that income of the plaintiff. At the time of dissolution the defendant was unemployed. Between 1985 and 1997 she was employed part-time in the school cafeteria working three hours per day. She eventually quit that job to obtain full-time employment. The court finds that based on her employment history and the plaintiff's employment history that the plaintiff has failed to prove that he would have obtained a modification of the alimony order had he filed such a motion at an earlier date.
The parties have an agreement that any modification of the existing alimony order should be retroactive to November 10, 2000.
At the time of dissolution, the plaintiff had gross weekly income of $648.20 and a net weekly income of $457.11. He had weekly expenses including mortgage increment of $345.66. At the present time, he has gross weekly income of $831.20 and a net weekly income of $548.50. He has total weekly expenses including the $75 alimony payment that he is making of $707.38. He presently has liabilities of $8,690 and at the time of dissolution, his only liability was a home mortgage with a balance of $7,800 that he was not ordered to pay.
Since the time of dissolution, the plaintiff has had multiple surgeries regarding his wrist and shoulder. CT Page 7224
At the time of dissolution, the defendant did not have any income. At the time of dissolution, she had basic weekly expenses totaling $312.25. At the present time, she has gross weekly income of $300 and a net weekly income of $229.69. She has gross weekly expenses of $362.41. The court enters an order modifying the alimony from $125 per week to $50 per week retroactive to November 10, 2000. Between November 10, 2000 and the date this hearing completed on March 12, 2001, a total of 17 weeks, the plaintiff has paid to the defendant $75 per week, $25 per week for which he is to receive a credit of $425 thereby reducing the total arrearage from $43,829.31 to $43,404.31 as of March 12, 2001. The court does not award counsel fees to either counsel in this case. The court orders that the existing arrearage be paid at the rate of $100 per week, in addition to the reduced alimony of $50 per week. In the event the parties cannot agree as to what additional credit, if any, the plaintiff is entitled to for the period of March 12, 2001 to the date this decision is filed, then they will have to claim that issue for a short calendar hearing. The court also authorizes an immediate wage execution for the reduced alimony amount of $50 per week and the arrearage payment of $100 per week.
AXELROD, J.