[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties in the above captioned matter have stipulated to the amount the plaintiff owes as a result of his failure to pay the Internal Revenue Service lien, the People's Bank Master Card and the portion of the mortgage that was applicable to the prior second mortgage that was used for the plaintiff's business. The parties have also stipulated what the amount of the arrearage for alimony and child support is as of September 14, 1999.[1]
The parties have agreed that any orders modifying the child support will be retroactive to September 14, 1999.
The marriage of the parties was dissolved on July 17, 1993 (Moran,J.). As part of the dissolution the court accepted and incorporated the agreement of the parties (#110) into the judgment.
The dispute(s) before this court arise out of the provisions of Article III of that agreement. The parties have communicated on a regular basis throughout the years since the Judgment and there is no doubt that the plaintiff accumulated arrearage during the years 1994 through 1997. The plaintiff's testimony on this issue was credible.
The plaintiff testified that, at the end of 1997, he discovered that the defendant was living with a man in the house she had purchased in Southbury. The defendant was minimally employed at that time. The plaintiff testified that he did not believe he should be paying alimony in light of the cohabitation. To determine the proper amount of child support, he obtained a child support guidelines book from the clerk's office and computed the child support based on his income alone. In early 1998, the plaintiff confronted the defendant and she admitted that Mr. CT Page 2029 Ciriello was living with her.
Mr. Ciriello had, in fact, "purchased" an interest in the house some time in 1998.
The plaintiff credibly testified that, upon making an offer of alimony, the defendant agreed that she would accept the $270.00 in child support and the $55.00 toward the past amounts that he owed for a total of $325.00.
The defendant denied any agreement and testified that she could not afford a lawyer to go to court and did not know of Support Enforcement. Her testimony was not credible.[2] The plaintiff testified that he felt that he did not need to return to court because he had an agreement with the defendant.
The plaintiff testified, and the defendant did not dispute, that the defendant paid that amount through August of 1998 when the defendant dropped the two minors off with the plaintiff with words to the effect that they could live with their father because she had enough of them. The plaintiff believably testified that the defendant had never dropped the boys off with the indication that they should live with their father at any time before August, 1998. The plaintiff testified that the boys called their mother from Cape Cod and she reiterated that they were to stay with their father.
At the beginning of September, 1998, there was a conversation between the parties and the plaintiff testified that Derek, the youngest boy, returned to his mother to resume school in Southbury and Ryan, the older boy, was registered at Fairfield Prep and was to live with his father in Stratford. The plaintiff testified that the agreement was that he would pay half the child support, as figured from the guidelines, and the tuition to Prep. The defendant incredibly testified that the agreement was that the plaintiff would pay $135.00 less than the $650.00 that was owed (but not being paid) and would use that money to pay the Prep tuition which was $8,400.00. At the end of the school year, Ryan returned to his mother and the plaintiff started paying the $270.00 per week. He also informed the defendant and Ryan that he could not longer afford Fairfield Prep.
 FINDINGS
At first blush the court believed that Connelly v. Connelly,191 Conn. 468 (1983) might be controlling. As a result, both parties were provided an opportunity to brief the legal issues. Connelly does not apply to the present case since its factual situation is different. In CT Page 2030Connelly the plaintiff mother, who was the custodial parent, had filed a motion to modify the orders of alimony and child support. The defendant father filed no motion. During the hearing on the motion for modification, the plaintiff, on cross examination and in response to questions by the court, revealed that a man was living with her and she spent most of the summer on his boat. The court modified the child support upward but terminated the alimony based on Connecticut General Statutes § 46b-86 (b) without any motion for modification pending before the court. Since the statute required notice and since there was no motion to modify the alimony based on cohabitation the court in Connelly found:
 . . . that the plaintiff had insufficient notice that the issue of alimony termination pursuant to § 46b-86 (b) was being litigated at the hearing below. The public allegation that a woman is living with a man out of wedlock and is enjoying a financial benefit from that arrangement is one which is not lightly made and, even in this day, may carry an innuendo of disrepute. In addition, a judicial determination that such an allegation is true may have repercussions affecting persons other than the litigants and matters other than alimony. These considerations, which are reflected in the special notice and hearing requirements, support the conclusion that the trial court cannot on its own initiative consider § 46b-86 (b) as a ground for termination of alimony. We hold today that General Statutes § 46b-86 (b) is a separate and independent statutory basis for the modification of alimony and is a claim which must be raised in a written motion by the party seeking to modify the award of periodic alimony.
Id. at 477-478.
The defendant in Connelly never alleged that there was an agreement between the parties to reduce the alimony. In this matter, the credible evidence is that the agreement(s) were entered, as testified by the plaintiff
The plaintiff, in response to the motion for contempt filed by the defendant, has raised the defenses of laches, equitable estoppel and waiver.
Therefore, the holding in Connelly that the recipient of alimony must have notice through a motion for modification that she is facing a CT Page 2031 request to terminate alimony because of cohabitation in accordance with Connecticut General Statutes § 46b-86 (b) is clearly not applicable to this case. The plaintiff herein is not asking this court to terminate the defendant's alimony. The plaintiff is asking the court to prevent the defendant from enforcing a claim for arrearage as a result of conduct on her part that constitutes laches, equitable estoppel or waiver.
Should the court find one or more of the doctrines, laches, equitable estoppel or waiver, no claimed arrearage would be collectible. Hudyma v.Hudyma, 1998 WL 281811 (Solomon, J.)
Equitable Estoppel
Equitable estoppel is the effect of the voluntary conduct of a party whereby she is absolutely precluded, both at law and in equity, from asserting rights that might otherwise have existed against another person who has in good faith relied upon the first party's conduct and who has been led thereby to change his position for the worse. Bozzi v. Bozzi,177 Conn. 232, 241, 413 A.2d 834 (1979). There are two essential elements to an estoppel: (1) one party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and (2) the other party, influenced thereby, must actually change his position or do some act to his injury that he otherwise would not have done. Papcun v. Papcun, 181 Conn. 618,621, 436 A.2d 282 (1980).
It is clear that the parties entered the agreements as defined by the plaintiff. The plaintiff relied on the effectiveness of the agreement by not seeking judicial review/approval.
Laches
Laches likewise consists of two elements: (1) there must have been a delay that was inexcusable, and (2) that delay must have prejudiced the defendant. Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906
(1955).
Insufficient evidence was offered which would allow the court to determine that the defendant's delay was "inexcusable".
Laches does not apply.
Waiver
Waiver is the intentional relinquishment of a known right. Olean v.Treglia, 190 Conn. 756, 773, 463, A.2d 242 (1983). In contrast to the CT Page 2032 doctrines of equitable estoppel and laches, waiver does not require a showing of prejudice or detriment on the part of the other party.
Throughout the testimony it is clear that the defendant knew she had rights in the court concerning financial claims. She intentionally did not pursue those rights. Her testimony about not being able to afford any attorney, not knowing about support enforcement, never having consulted with court clerk on enforcement procedures and to keep peace, simply is not believable.
Not only did the defendant never seek external assistance to enforce the rights she knew she had, she never objected to the agreements (never wrote a letter, made a call, etc.) in communications with the plaintiff.
It is clear, the defendant waived her enforcement rights intentionally and accepted the agreements proposed by the plaintiff.[3]
 ORDERS
The agreed upon calculation of the parties, the claimed arrearage is reduced to $24,075.00 (The $32,950 claimed by defendant is not allowed).
There was never a harmonious agreement on the Prep education. Plaintiff shall pay the balance due (either to the school, or if paid by the defendant, to the defendant).
The plaintiff's attempt to claim some credit for some adjustment for the support for the Prep year is not consistent with his own position. There never was a claim that an agreement was reached on this area of issue.
There being no evidence which demonstrates any wilful misconduct by the plaintiff, no finding of contempt will enter.
There is no evidence that plaintiff has the capacity to make any lump sum payment on his arrearages.
It is found that the defendant, who is in good health and intelligent, has and has had since September 14, 1999, an earning capacity of $375.00 per week. Thus as of September 14, 1999, the support figure for plaintiff's contribution is $195.00 per week. Said order is effective until November 22, 2001 at which time father's obligation is $130.00 per week until further order of the court or December 4, 2002, whoever occurs first.
In order to address the arrearages, the plaintiff is ordered to pay CT Page 2033 $270.00 per week (current support plus a varying amount on the arrearage until the entire debt is paid).
Defendant asserts a claim for attorney's fees pursuant to Article XVIII. The court refuses on two grounds; first, the court does not find a breach of the agreement and, second, defendant has shown no capacity by the plaintiff to pay such fees.
DANIEL E. BRENNAN, JR., J.sym.