[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Robert Berube and Debra Berube, brought this action against Louis Nagle, Donald Bessette and Greg LaLummier. CT Page 7192
As to Nagle and LaLummier, the plaintiff is bringing the action for quiet title and right of access across a certain lot to Osga Lane in Griswold. He is also suing Nagle for nuisance and intentional infliction of emotional distress.
He is suing Donald Bessette for breach of warranty. The action against LaLummier is for quiet title.
 FACTS
Prior to 1987, the defendant, Donald Bessette, owned lot 18.2, lot 18.1 and lot 19 all bordering on Osga Lane in Griswold. On February 19, 1987, he sold lot 18.2 to the Berubes. At that time he assured them that they would have access to Osga Lane across lot 19 which he also owned. At a later time, Bessette sold lot 18.1 and lot 19 to the Nagles according to their testimony. Lot 26 was on the eastern side of Osga Lane and was sold to the defendant LaLummier at a later time. LaLummier claims an easement across lot 19 and 18.2 to a lake west of the properties on lot 18.2 and 18.1.
The plaintiffs are seeking a determination of their rights in their premises known as 83 Osga Lane (lot 18.2) and a clarification of the rights of all parties to the small northerly corner of lot 19 also, by way of access.
Plaintiffs acquired title to lot 18.2 from Donald Bessette by warranty deed recorded on February 19, 1987. Specifically included in the conveyance was the "right to use the right-of-way leading to Bethel Road for all purposes of ingress and egress.' Mr. Bessette's testimony established that Bethel Road is a highway some distance from the subject premises and that a right-of-way commonly known as Osga Lane affords the plaintiffs access to the highway by crossing lot 19. The plaintiff's claim that the evidence shows that they were conveyed an estate in the land that showed an easement across lot 19 for all purposes including access, egress, parking and the erecting of assorted structures including a shed. Bessette testified that after he sold lot 18.2 to the plaintiffs in 1987, he built a house on lot 18.1 to the south of lot 18.2 in which he formerly resided. Both lots front on Pachaug Pond. Without the pertinent right to utilize adjacent portions of lot 19, both lots 18.1 and 18.2 would be landlocked. The portion of lot 19 in dispute is approximately 50 feet wide and 50 feet along each side, with the hypotenuse along Osga Lane which is about 70 feet.
Bessette testified that at the time he conveyed lot 18.2 to the plaintiffs he had retained ownership of both lot 18.1 and lot 19. Today both lot 18.1 and all of lot 19 are claimed by the defendants Louis and CT Page 7193 Sandra Nagle in fee simple absolute. Nagle testified that they obtained both of these parcels from Donald Bessette. None of these claims were proven by any deed. The plaintiff does not claim ownership of lot 19, but he claims the right to use part of it for all purposes including ingress egress and parking. The clear language of the deed to the plaintiffs shows that they have the right to use the right-of-way leading to Bethel Road for purposes of ingress and egress. The plaintiff claims, therefore, that the language of the deed to the Berubes clearly and unambiguously conveyed the rights described and that no further inquiry into the subject is required and title shall be quited in favor of the Berubes for "all purposes" as already discussed. Broadway v. Buxton,43 Conn. 282 (1876).
During the year 2000, the Nagles orally informed the Berubes that they intended to park their cars in the area that the Berubes use for their own parking area, and that the Berubes would have to park some where else. Shortly before Christmas, in the year 2000, Louis Nagle parked his car so as to obstruct Berube from getting out of the property. On Christmas eve of that year, Berube parked his truck on lot 19 in such a manner that Louis Nagle could not park his vehicle and get to Osga Lane whereupon Nagle called state police to arrest Berube for trespassing. Despite Nagle's statement to the Berubes of his intent to exclude them from parking on lot 19, and Nagle's conduct by physically preventing Berube from doing so, it was not established that Berube's use of lot 19 for parking had been interrupted in a manner prescribed by C.G.S. §§47-38 and 47-39 which require, among other things, service to those using a claimed easement, in the case the plaintiffs, of the intention of the landowner to dispute the easement and prevent its acquisition by prescription. There having been no valid interruption of the Berubes' claim of easement upon lot 19, the statutory period for the Nagles to lawfully dispute any acquisition by the plaintiffs of a prescriptive right to park on lot 19 expired six months before February 19, 2002. The plaintiff had used lot 19 for parking ever since they had commenced residing on lot 18.2.
Regarding the claimed easement, Greg LaLummier testified that before he purchased lot 26, he inquired of the Berubes, among others, as to whether or not he had access to the lake. The plaintiffs do not dispute the existence of an easement in favor of lot 26, they dispute its location along the northern boundary of the land because their warranty deed from Bessette establishes fee simple absolute title to lot 18.2. The deed contains no encumbrances.
On the other hand, Mr. LaLummier's deed for lot 26 does include an easement across lot 19 and 18.2 to the lake. He also testified that the only reason he purchased the property was so that he could have access to CT Page 7194 the lake, Pachaug Pond, for dockage of his boat. Here we have a situation where Bessette's deed to Harold Earls, the predecessor of LaLummier, included an easement across lots 18.2 and 19 from lot 26 to the lake and the property of Berubes, and the deed to the Berubes' property does not show any easement. Apparently, there was a scriveners error which failed to show an easement on Berube's property. In a subsequent deed of lot 26 to the Earls, Bessette also conveyed a "right-of-way to Pachaug Pond, 15 feet in width located along the northerly line of other land of grantor." Since he sold lot 18.2 to the plaintiff's five years previously, Bessette no longer owned that land and the only land between the LaLummier premises and Pachaug Pond in 1992 consisted of lot 18.1 and lot 19. Accordingly, while it is presumed that Mr. Bessette intended to contract to convey right-of-way to Pachaug Pond to the Earls in 1983, it is equally presumed as a matter of law that he intended to convey lot 18.2 to the plaintiffs in 1987 without encumbrances.
 DISCUSSION
Regarding the LaLummier easement, the court finds that the Berubes knew and accepted the easement and gave LaLummier permission to access the pond. The Berubes presented a real estate appraiser, James Blair, who testified and submitted a report to the effect that the presence of the LaLummier easement on lot 18.2 would diminish the value of the plaintiff's property by 7.5% or more than $15,000 based upon his appraisal of the property. Accordingly, the court finds that LaLummier does have an easement across lot 19 and 18.2 to the Pachaug Lake. However, the court finds that the loss to the Berubes is $15,000 and orders that Bessette pay that amount for breach of contract.
The measure for damages for breach of contract in the deed from Bessett to the Berubes is diminishment of the value of lot 18.2 resulting from the LaLummier easement. The measure of damages for breach of the covenant against encumbrances is the difference between the actual fair market value of the property and the value of the property had it been as represented. Richard v. Waldman Sons, Inc., 155 Conn. 343, 349 (1967).
The court finds that the LaLummier easement is located on lot 19 and lot 18.2. Accordingly, the court must also find that Bessette breached one or more of the covenants contained in his warranty deed to the plaintiffs and must pay damages to them.
Additional claims made by the plaintiff against Nagle had to do with malicious erection of a structure, nuisance and infliction of emotional distress. Berube testified that subsequent to the Nagles dispute about lot 19 with the plaintiffs, they erected a chain link dog kennel on ground immediately along side the boundary line between their lot and CT Page 7195 that of the plaintiffs and only a few feet distance therefrom and immediately opposite the plaintiffs' dining room window. The plaintiffs said that the Nagles could have put the kennel elsewhere on their property but put it next to his diningroom window deliberately to torment the plaintiffs. Nagle claimed that he put the kennel where it was because his wife had suffered a shoulder injury and the prior location of the kennel prevented here from ease of access to the house. He claims he did not put it near the plaintiffs' house to torment them or cause them any difficulty. Prior to the time this action was brought, the kennel was moved away from the Berubes' house after they brought a suit for a temporary restraining order. The court does not find that the plaintiffs have proven their case with respect to intentional emotional distress regarding the kennel.
As to the claim of nuisance, again this claim has to do with the presence of the dog house on the Nagles' property directly adjacent to the Berube family home. The court again finds that this claim has not been established and that the Nagles did remove the kennel after a complaint was made to them. The court, therefore, denies the claims for emotional distress.
In summary, the court finds that the plaintiff has clear right of an easement across lot 19 and finds that the plaintiff may use that for all purposes including ingress, egress and parking without interference from the Nagles.
With respect to the claim against Bessette for depreciation of the plaintiffs' real property because of the loss of value as a result of the easement of LaLummier, the court finds that the plaintiff is entitled to recover $15,000, the decrease in value of his property as a result of such loss.
With respect to the other claims against Nagle for nuisance and malicious conduct, the court finds that they have not been established and denies those claims.
With respect to the claims of the defendant, LaLummier, his deed indicates a clear easement across the Berube property. The plaintiffs knew about it and as a matter of fact when he was planning to move into the area, discussed the matter with him and assured him that he had the right to cross their property. The plaintiff's current posture now that the defendant, LaLummier, has no interest in the pond easement is barred by the doctrine of equitable estoppel. The plaintiff's claim that the defendant has no interest in the pond easement is barred by the doctrine of equitable estoppel. The doctrine need not be specially pleaded and can be relied upon under a general denial. Allied Grocers Corp., Inc. v.CT Page 7196Caplan, 30 Conn. App. 274, 277 (1993).
The elements of equitable estoppel are straight forward. There are only two. One must have engaged in misleading conduct and someone must have relied on that conduct to the second party's detriment. This is a classic case of equitable estoppel. Bozzi v. Bozzi, 177 Conn. 232, 242 (1979).
 CONCLUSION
The court hereby enters judgment for the Berubes as to their claim for an easement across lot 19 for all purposes including ingress, egress, parking and any other appropriate use. The court also finds that LaLummier has an easement to the pond across the property of the Berubes by way of equitable estoppel. The Berubes are entitled to $15,000 damages from Bessett for his breach of the covenants in the Berubes' warranty deed.
Finally, as to Berubes' claim for intentional emotional distress, malicious erection of a structure and nuisance, the court finds that the Berubes have failed to meet the burden of proof and must deny these claims. Accordingly, the court must also deny the claims for exemplary or punitive damages for these claims since the court finds the claims were not proven.
D. Michael Hurley, Judge Trial Referee